Justin Michael **WOLFE**, Petitioner,

v.

Gene M. **JOHNSON**, Director, Virginia Department of Corrections, Respondent.

Civil Action No. 2:05cv432.

United States District Court, E.D. Virginia, Norfolk Division.

Feb. 4, 2010.

Michael Jill Brace, Esq., Alan Dial, Esq., Ashley C. Parrish, Esq., Brian Meiners, Esq., Daniel James King, Esq., Edward B. MacMahon, Esq., James Griffin, Esq., Kimberly Anne Irving, Esq. for Petitioner.

Matthew P. Dullaghan, Esq., Steven Andrew Witmer, Esq., Robert Quentin Harris, Esq. for Respondent.

### MEMORANDUM OPINION AND ORDER

RAYMOND A. JACKSON, District Judge.

This matter is before the Court on Petitioner Justin Michael Wolfe's claim of actual innocence under *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) and his Motion for an Evidentiary Hearing on *Schlup* as well as his *Brady* and *Giglio* claims. Given the extensive record before the Court, an evidentiary hearing will not aid the Court on its disposition of whether Defendant has satisfied *Schlup.*

### I. FACTUAL AND PROCEDURAL HISTORY

On January 7, 2002, Petitioner was convicted by a jury of murder for hire, use of a firearm in the commission of a felony, and conspiracy to distribute marijuana. As a result of his convictions, Petitioner was sentenced to death on the murder for hire charge. Defendant was sentenced to thirty years and three years, respectively, on the drug and firearm charges.

Petitioner filed an appeal in the Supreme Court of Virginia on the murder for hire conviction and filed an appeal in the Virginia Court of Appeals on the firearm and drug convictions. The non-death penalty cases were certified to the Supreme Court of Virginia and consolidated. On February 24, 2004, Petitioner filed a petition for writ of habeas corpus in the Supreme Court of Virginia, raising twenty-three substantive claims. The Supreme Court of Virginia dismissed the petition on March 10, 2005. Petitioner filed a timely petition for rehearing, which the court denied on June 17, 2005. On July 8, 2005, Petitioner filed a petition for writ of certiorari with the United States Supreme Court, which was denied.

On July 22, 2005, Petitioner filed a notice of intent to file a petition for writ of habeas corpus in the United States District Court for the Eastern District of Virginia, Norfolk Division. This Court granted the motion, and counsel was appointed. On November 7, 2005, Petitioner filed his federal habeas petition under authority of 28 U.S.C. § 2254, in conformity with this Court's order that the petition be no longer than 75 pages. This petition was accompanied by an appendix consisting of 149 pages. On December 19, 2005, respondent filed a motion to dismiss.

On December 15, 2005, Petitioner filed an amended habeas petition which was 75 pages and also accompanied by a second volume to the appendix, consisting exclusively of affidavits of Owen Barber and Carl Huff. The primary difference between the original habeas petition and the amended petition is the presence of Barber's new version of the crime in the amended petition (the "Barber affidavit", J.A. 2943–55), an affidavit from Jason Coleman (the "Coleman affidavit", J.A. 2940), an affidavit from Carl Huff (the "Huff affidavit", J.A. 2957–63) and an affidavit from Wolfe's investigator, Bob Lessemun (the "Lessemun affidavit", J.A. 2924–34). The amended petition expanded on petitioner's actual innocence claim under *Herrera,* brought the procedural innocence *Schlup* claim, expanded upon the *Brady* claims previously raised, and raised the *Giglio* claim. In conjunction with this petition, Petitioner requested this Court to reset the schedule of the proceedings and grant the Commonwealth an additional thirty days to answer the Amended Petition. On December 19, 2005, the Commonwealth answered the Initial Petition.

On December 23, 2005, the Commonwealth moved to strike the Amended Petition on procedural grounds. On January 5, 2006, the Magistrate Judge deferred on

the Motion to Strike, and ordered Petitioner to detail the differences between the petitions, explain why the Amended Petition was necessary, and explain the additional supporting materials in the Appendix that were not included in the Initial Petition. On January 19, 2006, Petitioner responded. On September 22, 2006, the Magistrate Judge again deferred ruling on the Motion to Strike, but denied Petitioner's motion to expand the record to include the additional affidavits, and declined to considered the new exhibits in the Amended Petition as they exceeded the seventy-five page limit. On October 10, 2006, Petitioner filed objections to those rulings.

On August 7, 2007, the Magistrate Judge issued a Report and Recommendation where he declined to conduct an evidentiary hearing and recommended Petitioner's petition be dismissed. On October 10, 2007, Petitioner filed a series of objections to the Report. On February 11, 2008, this Court adopted the Report and dismissed Petitioner's petition. Petitioner then filed a motion to alter or amend the judgment which this Court denied on May 20, 2008. On June 18, 2008, Petitioner filed his notice of appeal.

On September 12, 2008, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") granted Petitioner a certificate of appealability on his extraneous influence, venireman, *Brady*, and *Giglio* claims. On May 11, 2009, the Fourth Circuit affirmed the district court's rulings on the extraneous influence claim and the venireman-counsel subpart, and vacated the *Brady, Giglio*, and venireman-court subpart claims. *Wolfe v. Johnson*, 565 F.3d 140 (4th Cir.2009). Additionally, the Fourth Circuit remanded for a determination on the *Schlup* issue and whether an evidentiary hearing was appropriate. *Id.*

## II. LEGAL STANDARD

### 1. *Schlup*

The Anti–Terrorism and Effective Death Penalty Act (AEDPA) standard is set forth in 28 U.S.C. § 2254(d)(2006), which provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(b)(1)(A), a petitioner should have presented his claims in state court before raising them in federal court; if a petitioner has not previously presented his claims, the claims are procedurally defaulted in most instances. *See Vinson v. True*, 436 F.3d 412, 417 (4th Cir.2006).

■ *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) provides a procedural gateway to adjudicate otherwise defaulted § 2254 claims. A *Schlup* claim of innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315, 115 S.Ct. 851 (citing *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)) Under *Schlup*, a § 2254 petitioner must demonstrate that "a constitutional violation has probably re-

sulted in the conviction of one who is actually innocent." *Id.* at 327, 115 S.Ct. 851 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). *Schlup* further explained, "To establish the requisite probability, the petitioner must show it is more likely than not that no reasonable juror would have convicted him the light of the new evidence." *Id.*

■ Under *Schlup*, the petitioner must use "new reliable evidence" to establish his actual innocence, "whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324, 115 S.Ct. 851. However, this list is not exhaustive. *See House v. Bell*, 547 U.S. 518, 537, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). A habeas court is also not bound by the rules of evidence; the Supreme Court in *Schlup* stated that "In assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on "actual innocence" allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." *Schlup*, 513 U.S. at 327–328, 115 S.Ct. 851.

## 2. Evidentiary Hearing

Title 28 U.S.C. § 2254(e)(2) governs whether a district court may conduct an evidentiary hearing in a § 2254 proceeding. Under that statute,

if the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that

(A) the claim relies on

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

■ The Supreme Court has further clarified the meaning of the opening clause of § 2254(e)(2) as to what it means for a petitioner to have "failed to develop the factual basis of a claim" in *Williams v. Taylor*, 529 U.S. 420, 431–35, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). In *Williams*, the Court stated that "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432, 120 S.Ct. 1479. Additionally, the Court explained that "Diligence for purposes of the opening clause depends on whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court," regardless of whether those efforts would have been successful. *Id.* at 435, 120 S.Ct. 1479. Furthermore, the diligence inquiry does not depend on whether facts could have been discovered. *Id.* However, the petitioner bears the burden of proving diligence in pursuing his claims in state court. *Id.* at 440, 120 S.Ct. 1479.

If an evidentiary hearing is not barred by § 2254(e)(2), the petitioner must show that the facts alleged would entitle him to relief. The court may consider exhibits as well as the petition when assessing the sufficiency of the § 2254 motion. Rule 4,

Rules Governing Section 2254 Cases (2006). These allegations are evaluated by the metric of Federal Rule of Civil Procedure 12(b)(6), where the court must favorably construe the allegations of the complaint and will assume all facts pleaded as true. *See Conaway v. Polk*, 453 F.3d 567, 582 (4th Cir.2006); *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

 The last inquiry is whether the petitioner can satisfy one of the six factors laid out in the pre-AEDPA decision of *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The *Townsend* Court held that a federal court must grant an evidentiary hearing to a habeas petitioner if:

(1) the merits of the factual dispute were not resolved in the state hearing;

(2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(4) there is a substantial allegation of newly discovered evidence;

(5) the material facts were not adequately developed at the state-court hearing; or

(6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id.* If a petitioner is not barred from an evidentiary hearing, alleges facts that would entitle him to relief, and meets at least one of the *Townsend* factors, the court is obliged to grant petitioner the evidentiary hearing on the factual disputes.

## III. DISCUSSION

### 1. *Schlup*

Petitioner argues that his procedural defaults should be excused under *Schlup* because Owen Barber, the prosecution's key witness and the confessed gunman in the murder, recanted his trial testimony concerning Wolfe's involvement in December 2005. Barber Affidavit, ¶ 5–7. In Barber's affidavit, he confesses to lying at Wolfe's trial and implicating Wolfe in order to avoid receiving the death penalty himself. *Id.* at 7, 50–55, 70.

The version of the story contained in the Barber affidavit—that Wolfe was not responsible—is confirmed by several other witnesses who explain what Owen Barber had confessed in conversations with them at varying points in time. Jason Coleman's affidavit states that Barber told him shortly after the murder that Barber had acted alone. Coleman Affidavit, ¶ 5. Carl Huff's affidavit affirms Barber's recantations, stating that while he was a cellmate with Barber from 2003 until 2004, Barber told him that Wolfe was not involved in the murder and further explained the details of what had occurred. Huff Affidavit, ¶ 14–15. Two additional inmates at Wallens Ridge State Prison also repeated a similar story to Wolfe's investigator, Bob Lessemun, about what Barber told them. Lessemun Affidavit, ¶ 28, Exh. A & B.

By contrast, the Commonwealth emphasizes that Barber has since recanted his December 2005 recantation. In April 2006, Barber sent a letter to Wolfe's lawyers, stating that his affidavit had been false and that his trial testimony was truthful, followed by affidavits later in 2006 and in 2009 confirming the same. J.A. 3044; Resp. Exh. A & B. Together with the other testimony at trial consistent with Wolfe's involvement, the Commonwealth argues that the Barber Affidavit

and the recantations therein should be disregarded as disreputable.

The Commonwealth quotes *United States v. Johnson*, 487 F.2d 1278, 1279 (4th Cir.1973), "Where the circumstances surrounding the recantation suggest it is the result of coercion, bribery, or misdealing[,] the district court is justified in disregarding it." Resp. at 5. As the Fourth Circuit noted on appeal in this case, however, "[t]his record simply does not, however, suggest any such 'coercion, bribery, or misdealing.'" 565 F.3d at 169. Unlike most recantations, Barber does not escape liability or improve his own situation by his recantation; rather, it is decidedly against his interest as he would face additional punishment. The 2006 and 2009 rescission statements, on the other hand, only further Barber's interest by removing the possibility of that additional punishment. Furthermore, Huff's letter to his attorney in 2009, which Huff subsequently affirmed in a declaration, allege extremely troubling incidents between Huff and correctional officials that occurred after Huff's affidavit. Pet. Exh. 43 ¶ 6–10 & Exh. A at 4–5. If any of these incidents with correctional officers in fact took place with Huff, there is a possibility that Barber's rescission also resulted because of coercion and misdealing.

Far from being disreputable, Barber's affidavit also has considerable corroboration. Those corroborating conversations, where Barber allegedly told a variety of individuals that Wolfe was not involved, occurred over a series of years, starting with Coleman in 2001. Though Barber now claims that he was lying when he told Huff that Wolfe was not involved, he confirms Huff's affidavit nonetheless. Resp. Exh. B ¶ 9. Notably, these affidavits are consistent with Barber's affidavit and with each other. Barber's affidavit also contains other indicia of reliability, such as its detail and its consistency with the other direct evidence in the trial. In addition, Barber's explanation of what occurred on the night of the murder in his affidavit is not only against his interest, but also against the interest of his girlfriend, Jennifer Pasquiarello, and his friend J.R., Martin. Barber has no interest in implicating these persons without reason, and their involvement is an independent detail which would not otherwise help Wolfe.

This is not a case with voluminous direct evidence. At trial, Barber was the only direct witness to link Wolfe to the crime. With these later affidavits, there is now competing evidence as to whether Barber even claims that Wolfe was involved. The testimony of Jennifer Pasquiarello and J.R. Martin is also called into question by Barber's affidavit, as both were premised upon information Barber allegedly told them. Furthermore, Barber's affidavit also implicates Martin in the murder, adding a considerable motive for Martin to testify against Wolfe. The other circumstantial evidence that the Commonwealth highlights establish Wolfe's guilt, such as the letter from Jennifer Pasquiarello, the telephone calls, and the events at the nightclub, also have a competing explanation given Barber's affidavit. Resp. at 6–7; Barber Affidavit ¶ 34–36, 40–43, 58.

The Court in *Schlup* affirmed that "[t]he *Carrier* standard reflects the proposition, firmly established in our legal system, that the line between innocence and guilt is drawn with reference to a reasonable doubt" 513 U.S. at 328, 115 S.Ct. 851. In this case, there are two stories of what occurred on the night of the murder, both with hearsay corroboration—and almost no other evidence that would support one version over another. Even considering the affidavits critically, there is enough to raise doubt in a reasonable juror's mind about the circumstances of the night of the

murder. Unlike the exacting standard of *Herrera*, the *Schlup* Court found that "if the habeas court were merely convinced that those new facts raised sufficient doubt about Schlup's guilt to undermine confidence in the result of the trial without the assurance that that trial was untainted by constitutional error, Schlup's threshold showing of innocence would justify a review of the merits of the constitutional claims." 513 U.S. at 317, 115 S.Ct. 851. In this case, weighing the evidence, it is more likely than not that no reasonable juror would have found Wolfe guilty beyond a reasonable doubt. As a result, Wolfe has met the *Schlup* standard.

## 2. Evidentiary Hearing

The first inquiry is whether Petitioner is barred from receiving an evidentiary hearing, if he failed to develop the factual basis of his claims. With regards to *Brady*, Petitioner requested a hearing in state court, filed requests under the Virginia Freedom of Information Act, and moved for discovery on multiple occasions. As to *Giglio*, Petitioner alleged a violation in state court based on preliminary evidence regarding Barber's inconsistent statements based on *Brady*, later amended to a *Giglio* claim when Petitioner filed in federal court.

■ Beyond Wolfe's efforts in state court, much of the *Brady* and *Giglio* material in the Amended Petition stems from the Barber Affidavit, which was only executed in 2005. In *Conaway*, the Fourth Circuit stated that "Because Conaway has been reasonably diligent in pursuing his claim, and his failure to fully develop the facts related to the Juror Bias claim in state court is attributable to external causes, § 2254(e)(2) does not preclude him from being accorded an evidentiary hearing in federal court." 453 F.3d at 589. There is no indication that Barber would have been willing to give his affidavit at an earlier time, particularly as Petitioner's lawyers had repeatedly attempted to get Barber to make a statement and he had refused. The Barber Affidavit is precisely the type of external cause that *Conaway* holds excuses a failure to fully develop facts in state court. Petitioner's initial efforts to develop the factual basis of his claims in state court as well as the substantial new material provided from the Barber Affidavit establish diligence. Consequently, § 2254(e)(2) does not bar Petitioner from an evidentiary hearing.

■ When considering whether Petitioner has met the second prong and has alleged facts sufficient for § 2254 relief, the Court must favorably construe all allegations and assume all facts to be true. Under *Brady*, in order to obtain relief, the evidence must have been favorable to the accused, it must have been suppressed by the government, and that suppression must be material. *Monroe v. Angelone*, 323 F.3d 286, 299 (4th Cir.2003). *Brady*'s materiality requirement is met when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). *Giglio*, as a corollary to the due process rights established in *Brady*, provides for relief when the prosecution fails to correct false testimony. 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Under *Giglio*, a violation is material when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

If either the Petitioner's *Brady* or *Giglio* allegations have merit, Petitioner would be entitled to relief. Petitioner has alleged serious violations of his rights, including withheld exculpatory information

and the prosecution coordinating the testimony of the two key witnesses at trial. In addition, Wolfe offers evidence of undisclosed plea agreements to prosecution witnesses, numerous audiotape interviews, and Barber's changing story. As none of this information was provided to petitioner, it meets both the requirements of suppression and materiality, for there is a reasonable probability it would have substantially helped Petitioner during his trial. The coordination of Barber and Martin's testimony provides for what would be impeachable material, uncorrected by the prosecution, easily establishing a reasonable likelihood that it could have affected the judgment of the jury. These allegations are made even without the benefit of discovery that could lead to considerable additional exculpatory material.

Lastly, in order for the Court to find that Petitioner must be granted an evidentiary hearing, Petitioner must meet one of the factors delineated in *Townsend v. Sain.* In *Townsend,* the Supreme Court stated, "a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts." 372 U.S. at 318, 83 S.Ct. 745. In this case, Petitioner appears to have met at least three of the six factors established in *Townsend;* specifically,

(1) the merits of the factual dispute were not resolved in the state hearing;
. . .
(4) there is a substantial allegation of newly discovered evidence; [and]
(5) the material facts were not adequately developed at the state-court hearing.

*Id.* at 313, 83 S.Ct. 745. The affidavits executed subsequent to Petitioner's state hearing provide material that is newly discovered and as such, has not been adequately developed at any prior hearings. As a result, the *Brady* and *Giglio* claims as they presently stand have not been resolved on their merits. Because Petitioner is not barred from an evidentiary hearing under § 2254(e)(2), has pled facts sufficient to entitle him to relief, and has met at least one of the *Townsend* factors, he must be granted an evidentiary hearing on his *Brady* and *Giglio* claims.

### CONCLUSION

Based upon the forgoing reasons, Petitioner has satisfied the *Schlup v. Delo* standard. Petitioner's Motion for an Evidentiary Hearing on his *Brady* and *Giglio* claims is **GRANTED.** Petitioner's Motion for Discovery on *Brady* and *Giglio* is **GRANTED.** The Court will reserve its ruling on Petitioner's venireman-court claim. The parties are **DIRECTED** to meet and confer to narrow the scope of discovery. Within thirty (30) days of the date of this order, the Court will confer with parties to schedule an evidentiary hearing and other deadlines to adjudicate this habeas petition.

The Clerk is directed to send a copy of this Order to counsel.