**AMENDED OPINION**

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DEXTER LEE VINSON,
          *Petitioner-Appellant,*

v.

WILLIAM PAGE TRUE, Warden,
Sussex I State Prison,
          *Respondent-Appellee.*

No. 04-29

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-02-106-3)

Argued: October 26, 2005

Decided: December 15, 2005

Amended Opinion Filed: February 1, 2006

Before WIDENER, MOTZ, and DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Widener and Judge Duncan joined.

---

**COUNSEL**

**ARGUED:** Matthew Leland Engle, VIRGINIA CAPITAL REPRE-
SENTATION RESOURCE CENTER, Charlottesville, Virginia, for
Appellant. Katherine P. Baldwin, Senior Assistant Attorney General,

OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Robert E. Lee, Jr., VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER, Charlottesville, Virginia; Mark E. Olive, Tallahassee, Florida, for Appellant. Judith W. Jagdmann, Attorney General of Virginia, Richmond, Virginia, for Appellee.

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Dexter Lee Vinson appeals the denial of his federal habeas petition, in which he sought relief from a death sentence. We granted a certificate of appealability on three issues: (1) whether the district court erred in failing to hold an evidentiary hearing on Vinson's claim that his trial counsel operated under an unconstitutional conflict of interest; (2) whether Vinson was denied effective assistance of counsel; and (3) whether the state failed to disclose material exculpatory evidence. For the reasons that follow, we affirm the district court's denial of habeas relief.

I.

In December 1998, a Virginia jury convicted Dexter Lee Vinson of the capital murder of Angela Felton, object sexual penetration, abduction with intent to defile, and carjacking.[1] In a separate sentencing proceeding, the jury sentenced Vinson to life in prison for each of the three non-capital offenses, and to death on the capital murder charge, finding that the crime was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, aggravated battery to the victim," and that there was "a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society." The Supreme Court of Virginia affirmed.

---

[1]A description of the underlying facts involved in these dreadful crimes can be found in the Supreme Court of Virginia's decision on Vinson's direct appeal. *See Vinson v. Commonwealth*, 522 S.E.2d 170, 173-75 (Va. 1999).

*Vinson v. Commonwealth*, 522 S.E.2d 170 (Va. 1999). The Supreme Court of the United States denied certiorari. *Vinson v. Commonwealth*, 530 U.S. 1218 (2000). Vinson then filed a petition for a writ of habeas corpus with the Supreme Court of Virginia, which it dismissed in November 2001. An execution date was subsequently set for February 28, 2002, but the United States District Court for the Eastern District of Virginia stayed the execution on February 25, 2002. Vinson then filed a petition for federal habeas relief with the district court, which ultimately denied him any relief and dismissed his petition. We granted Vinson a certificate of appealability limited to the three issues enumerated above.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.A. § 2254(d) (West Supp. 2005), federal courts reviewing petitions for habeas relief must give great deference to state court judgments on the merits. A writ should not be granted on any claim adjudicated on the merits by the state court unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

## II.

Vinson initially contends that the district court erred in not granting him an evidentiary hearing on the question of whether his trial counsel labored under a conflict of interest.

Vinson argues that under *Townsend v. Sain*, 372 U.S. 293 (1963) and *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), a federal habeas court *must* grant an evidentiary hearing to determine whether an actual conflict of interest exists. *Townsend* and *Keeney* establish that a habeas petitioner "is entitled to an evidentiary hearing if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure," or that "a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing." *Keeney*, 504 U.S. at 11-12.

Vinson relies on *Cuyler v. Sullivan*, 446 U.S. 335 (1980) for his conflict of interest claim. In *Sullivan*, the Supreme Court held that

"[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348. If a defendant successfully demonstrates that "a conflict of interest actually affected the adequacy of his representation," he "need not demonstrate prejudice in order to obtain relief." *Id.* at 349-50.

Vinson's conflict of interest claim arises from the undisputed fact that during his trial, Vinson's "second chair" counsel, Tanya Lomax, was suing Vinson's lead counsel, John Underwood, for employment discrimination that had allegedly occurred during Lomax's employment at the Portsmouth Public Defender's Office. Vinson contends that the separate employment litigation between Lomax and Underwood adversely affected his representation in two ways: first, Lomax suffered health problems resulting from the stress of the litigation; and second, the way Underwood and Lomax divided the work and responsibilities of his case into distinct guilt and sentencing phases left Lomax inadequately supervised by Underwood.

When Vinson raised this claim for the first time in the state habeas proceedings, the Supreme Court of Virginia held that the claim was barred under state law because it could have been brought on direct appeal. *See Slayton v. Parrigan*, 205 S.E.2d 680 (1974). This procedural bar constitutes an adequate and independent state law ground for default. *See Wright v. Angelone*, 151 F.3d 151, 159-60 (4th Cir. 1998). Absent a fundamental miscarriage of justice, which Vinson does not assert, federal habeas courts may not review procedurally barred claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish "cause," a prisoner must "show that some objective factor *external to the defense* impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (emphasis added). This requires a demonstration that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999) (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). A petitioner may not establish cause "by pointing to evidence that the petitioner 'knew about or could have discovered' through a 'reasonable investigation.'" *Basden v. Lee*, 290 F.3d 602, 618 (4th

Cir. 2002) (quoting *McCleskey*, 499 U.S. at 497-98); *see also Rose v. Lee*, 252 F.3d 676, 687 (4th Cir. 2001).

Rather than relying on evidence not "reasonably available" to him "at the time of the state proceeding," Vinson instead "point[s] to evidence" that he clearly "knew about" at the time of his trial. Prior to trial Lomax informed Vinson of the facts giving rise to the asserted conflict, and Vinson consented to representation by "conflicted" counsel. In a sworn, written waiver, Vinson explicitly stated that "[w]ith full knowledge and understanding of Attorney Lomax's complaint and disclosure, I freely and voluntarily give my consent to have Attorney Lomax continue to represent me in the above-styled matter." In Vinson's presence, defense counsel then presented Vinson's waiver to the trial court. In light of this waiver, it is plain that the facts of the alleged conflict between Lomax and Underwood were not only available to Vinson, but were specifically presented to him for his consideration and consent. His voluntary, knowing, and informed decision to continue with Lomax as his counsel precludes any argument that a factor *external* to the defense caused the procedural default. Vinson thus does not depend on facts that could not have been previously discovered, and he cannot establish cause to overcome the procedural bar.[2]

In addition to its holding that the claim was procedurally barred from habeas review, the Supreme Court of Virginia also rejected Vinson's conflict claim on the merits. Sworn statements from both Underwood and Lomax stated *inter alia* that the discrimination suit had no effect on their representation of Vinson, that the two lawyers had a good working relationship with no friction, problems or issues during their representation of Vinson. The court explained that Vinson was fully informed by counsel of the details of the conflict and was told he could obtain alternate counsel, but that he decided to continue with Lomax as his counsel. Consequently, the state court held that there was "no evidence that an actual conflict of interest existed between lawyer and client."

Given these facts, we can hardly find the state court's rejection of Vinson's conflict of interest claim on the merits contrary to or an

---

[2]Because Vinson cannot show cause, his *Keeney* claim also fails. 504 U.S. at 11-12.

unreasonable application of clearly established Supreme Court precedent. *See id.* § 2254(d). The Court has explained that to succeed on a conflict of interest claim, a petitioner must establish that "'his counsel *actively represented* conflicting interests,'" and that this conflict "adversely affected his counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 174-75 (2002) (quoting *Sullivan*, 446 U.S. at 350) (emphasis added by *Mickens* Court). Here the asserted conflict does not involve Vinson's counsel's "active representation" of "conflicting interests" — Vinson makes no claim that Underwood and Lomax *represented* individuals with conflicting interests. Rather, this is a case in which Vinson's two attorneys had an *independent and unrelated conflict between themselves*.

In sum, we must reject Vinson's argument that the district court erred in refusing to provide him an evidentiary hearing on his conflict claim. The facts underlying Vinson's claim were available to him at the time of the state court proceedings, he expressly consented to any alleged conflict, and he does not proffer facts that establish constitutional error.

## III.

Vinson next asserts that he was denied effective assistance of counsel in violation of *Strickland v. Washington*, 466 U.S. 668 (1984).

To prove a Sixth Amendment violation under *Strickland* a defendant must demonstrate "that counsel's performance was deficient," and that this "deficient performance prejudiced the defense." *Id.* at 687. To succeed in showing prejudice, a defendant must demonstrate that there is a "reasonable probability" that absent the alleged errors, "the result of the proceeding would have been different." *Id.* at 694.

Vinson raises several ineffective assistance contentions. He challenges various trial decisions of his lawyers, their preparation of mitigation and other sentencing evidence, and their response to prosecution evidence as to future dangerousness. The Supreme Court of Virginia adjudicated each of these claims on the merits and determined that Vinson had failed to establish ineffective assistance under *Strickland*. For the reasons that follow, we conclude that none of the Virginia court's rulings constitutes an unreasonable factual determi-

nation or is contrary to or an unreasonable application of Supreme Court precedent.

Vinson argues that his counsel failed to sufficiently investigate the nature and extent of the perjured testimony of a grand jury witness, Priscilla Turner, prior to deciding not to call her as a witness at trial, and that they failed to object to assertedly erroneous statements made by the prosecutor in closing arguments. The state court examined these allegations, determined that Vinson's counsel made these decisions for strategic reasons, and found that neither decision violated the performance or prejudice prong of *Strickland*. On habeas review, a federal court generally credits "plausible strategic judgments in the trial of a state case." *Bunch v. Thompson*, 949 F.2d 1354, 1364 (4th Cir. 1991). Of course, we would not regard as tactical a decision by counsel if it made no sense or was unreasonable "under prevailing professional norms." *See Wiggins v. Smith*, 539 U.S. 510, 521-24 (2003). But that is not the case here.

The Virginia court also carefully considered Vinson's claims that his counsel did not adequately present the argument that Vinson lacked the requisite intent to defile, did not provide Vinson's court-appointed psychologist, Dr. Schlichter, with adequate information, and failed to investigate and present evidence of Vinson's background for mitigation purposes. The state court rejected these contentions, finding that presenting evidence as to whether Vinson had the requisite intent to defile would have been inconsistent with Vinson's defense that he did not commit the crime at all. The court further found that counsel responded to Dr. Schlichter's requests for information, secured an additional expert witness at the doctor's request, and spoke with him on numerous occasions.

The record also reveals that, although they were requested to supply mitigation information, Vinson and his family failed to do so, but that nevertheless defense counsel independently discovered mitigation evidence. At sentencing, Vinson's counsel presented a mitigation case that included Vinson's school records and favorable testimony from Vinson's mother, his step-father, two court-appointed expert witnesses, a previous employer, Vinson's high school band leader, a parole officer, and a church leader. The case at hand thus stands in stark contrast to *Wiggins*, on which Vinson heavily relies. There, the

Court found constitutionally ineffective counsel who relied *solely* on three documents and failed to investigate further or present *any* mitigation evidence on the defendant's background despite information in these documents that could have been used to uncover helpful mitigation information. *Wiggins*, 539 U.S. at 523-26.

Finally, the Supreme Court of Virginia examined Vinson's argument that counsel failed to respond sufficiently to the prosecution's expert testimony as to future dangerousness. Vinson's counsel explained that she relied on the defense expert's advice about how best to discredit the prosecution's expert. She thus focused her cross-examination on the fact that the prosecution's expert made his conclusions after meeting with Vinson for only an hour, and without conducting any tests of his own. The court concluded that this reliance on the defense expert's advice did not violate the performance prong of *Strickland*. We do not find this assessment of Lomax's method and strategy of examination to be unreasonable or contrary to *Strickland*.

All of Vinson's ineffective assistance of counsel claims were deemed insufficient to satisfy either the performance or prejudice prongs of *Strickland* by the Virginia court, and we conclude that these holdings are neither contrary to nor involve an unreasonable application of established Supreme Court precedent. These claims therefore provide no basis for habeas relief.

## IV.

Vinson also asserts entitlement to habeas relief on the ground that Virginia withheld material exculpatory evidence from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1965).

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. To succeed on a *Brady* claim, the accused must prove that the evidence suppressed is favorable to him, either because it is exculpatory or because it has some impeaching value; that the prosecution suppressed the evidence; and that prejudice resulted from the suppression. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice exists when there is

a reasonable probability that, had the prosecution disclosed the suppressed evidence, the result of the trial would have been different. *Id.* at 289. Vinson presents several *Brady* claims, each of which the Supreme Court of Virginia rejected on the merits.

Vinson contends that the prosecution inadequately disclosed the extent to which one of its grand jury witnesses, Priscilla Turner, perjured herself. Rather than informing Vinson that Turner's *entire* testimony was false, the Government's disclosure indicated that one part of her testimony was false and that it would not call her as a witness at trial.[3] The Supreme Court of Virginia, noting that "the Commonwealth attached Turner's statement to the police" to its Supplemental Discovery and Exculpatory Evidence submission and "informed the defense that Turner would not be testifying at trial," determined that that disclosure was constitutionally sufficient. We cannot hold the state court's determination contrary to, or an unreasonable application of, *Brady*. In fact, in sworn affidavits, defense counsel stated that based on the Government's disclosure, they proceeded as if Turner's *entire* testimony were false. Thus, the state court's conclusion that the disclosure sufficed to satisfy *Brady* was hardly unreasonable.

Other asserted *Brady* violations center on the testimony of Vertley Hunter, a critical eyewitness who testified for the Government. Vinson contends that Hunter made several exculpatory and material statements that were not disclosed to him at the time of his trial. He argues that Hunter made a statement contained in some handwritten notes in the prosecution's files in which she claimed to have seen the perpetra-

---

[3]Related to this argument is Vinson's contention that the Government's insufficient disclosure that perjured testimony was used to obtain his indictment violated his rights under *Brady* and *Napue v. Illinois*, 360 U.S. 264 (1959). In *Napue*, the Supreme Court held that a "State may not *knowingly* use false evidence, including false testimony, to obtain a tainted conviction." *Id.* at 269 (emphasis added). There is no evidence in the record that the Government *knew* that Turner was lying when she testified before the grand jury, and once the Government discovered the perjury, it provided the defense with the supplemental discovery regarding the perjury. Furthermore, the Government did not call Turner as a witness at trial. Thus, there was no violation of *Napue*, and as discussed above, the Government's disclosure was sufficient to satisfy *Brady*.

tor at a time when Vinson was at work, a statement that conflicts with one Hunter made in an affidavit submitted in the state habeas proceedings in which she claimed she never saw Vinson again after the time of the crime. Vinson also points to a statement made in an affidavit not submitted until the federal habeas proceedings in which Hunter claimed to have seen the perpetrator at a time that Vinson was undisputedly in police custody, and in which she contended the prosecution threatened her into testifying. Vinson further claims *Brady* error from the Government's failure to disclose that there was a pre-existing relationship between Hunter and Turner, and that the second eye-witness, Janice Green, stated that she did not know whether she would recognize the perpetrator if she saw him again.

The Supreme Court of Virginia concluded that even if the statement in the handwritten notes regarding the second sighting of the perpetrator was made by Hunter, it was not material since, given the substantial evidence against Vinson, there was "no reasonable probability that had the [handwritten] notes been disclosed the result of Vinson's trial would have been different." The court also explained that there was no evidence that the Government knew of the relationship between Hunter and Turner, and in any event, it was immaterial. And it further found that, even assuming Green's statement could have been used for impeachment, it too was not material.

Again, AEDPA governs our review of the conclusions of the state court as to the materiality of the handwritten statement and the relationship between Hunter and Turner, and whether the presence of substantial physical and forensic evidence demonstrating Vinson's guilt weighed against the materiality of the suppressed evidence. In particular, the record reveals that the Government presented evidence of blood on Vinson's shorts matching the DNA of the victim, Vinson's fingerprints on the car in which the victim was abducted and in the house where the victim's body was found, and eyewitness testimony identifying Vinson as the man who abducted the victim and as the person who pulled a board off of the abandoned house and dragged something heavy inside. Given this evidence,[4] we can only

---

[4]This evidence also forecloses Vinson's claims that he is entitled to a mandatory evidentiary hearing regarding the conflicting affidavits prepared by Hunter. Vinson simply cannot show the required actual prejudice in view of the substantial evidence presented at trial. *See Keeney*, 504 U.S. at 11-12.

conclude that the state court's adjudication that the withheld evidence was not material is not contrary to or an unreasonable application of *Brady*, and that the additional statements contained in Hunter's federal habeas affidavit are insufficient to demonstrate a reasonable probability of a different result.

Vinson's final *Brady* contention is that the materiality analysis conducted by the state court was flawed. He argues that the cumulative effect of the exculpatory evidence suppressed by the Government caused actual prejudice and that habeas relief is therefore required under *Kyles v. Whitley*, 514 U.S. 419 (1995). To satisfy *Kyles*, Vinson must show that, considering all of the suppressed evidence, there is a *reasonable probability* that the outcome of the trial would have been different. *Id.* at 434. In light of the strength of the evidence in this case, Vinson cannot meet this burden. The cumulative effect of *all* of the undisclosed exculpatory or impeaching evidence simply cannot satisfy the required showing of a reasonable probability of a different result. *See Strickler*, 527 U.S. at 291-96 (denying relief where, in light of the "considerable forensic and other physical evidence linking petitioner to the crime," petitioner did not show a reasonable probability of a different outcome had the suppressed evidence been disclosed). Thus, because Vinson has shown neither materiality nor actual prejudice, his final *Brady* claim also fails.

## V.

For the foregoing reasons, the judgment of the district court denying habeas corpus relief is

*AFFIRMED.*