**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4139

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARIO ALBERTO MONDRAGON,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Voorhees, District Judge. (5:14-cr-00058-RLV-DSC-1)

Argued: March 24, 2017                          Decided: June 21, 2017

Before NIEMEYER, MOTZ, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Motz and Judge Diaz joined.

**ARGUED:** Richard Lamb Brown, Jr., LAW OFFICES OF RICHARD L. BROWN, JR., Monroe, North Carolina, for Appellant. Elizabeth Margaret Greenough, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Jill Westmoreland Rose, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

After Mario Mondragon was convicted by a jury of conspiracy to distribute methamphetamine and of possession with the intent to distribute methamphetamine, the district court sentenced him to 360 months' imprisonment. In determining Mondragon's sentence, the court applied a two-level enhancement for possession of a weapon, as provided in U.S.S.G. § 2D1.1(b)(1) — an enhancement designed to "reflect[] the increased danger of violence when drug traffickers possess weapons," *id.* § 2D1.1(b)(1) cmt. n.11(A). In doing so, the court relied on statements from two coconspirators, one who first met Mondragon during and as part of the conspiracy and who reported that he "saw Mondragon take apart or 'break down' a revolver pistol while at [the coconspirator's] residence," and the other who reported that he had seen "Mondragon with at least two handguns" in the past.

Challenging the district court's application of the enhancement, Mondragon argues that the record does not show that his firearm possession bore any relation to his drug-trafficking activities and therefore that the enhancement does not apply. We conclude, however, that the government provided the district court with sufficient evidence to support a finding that Mondragon possessed a firearm in connection with his drug-distribution activities, and accordingly we affirm.

I

Following Mondragon's arrest in June 2014, a federal grand jury returned an indictment charging him in one count with participation in a conspiracy from 2012 until

June 2014 to distribute methamphetamine, in violation of 21 U.S.C. §§ 841 and 846, and in a second count with possession with the intent to distribute methamphetamine on July 13, 2013, as well as aiding and abetting the same, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. A jury convicted Mondragon on both counts.

The evidence that the government presented at trial included statements that Mondragon had previously made during interviews with law enforcement officers admitting his involvement in a multi-kilogram methamphetamine trafficking conspiracy. During these interviews, he stated further that "his closest associate in [the] drug trafficking organization was Garry Carroll," whom he had first met in August 2012 when he provided Carroll with one-half a kilogram of methamphetamine. Carroll testified similarly, stating that when another drug dealer first introduced him to Mondragon in 2012 or 2013, he began to buy methamphetamine from Mondragon for distribution. Another coconspirator, Donald Young, also testified to purchasing methamphetamine from Mondragon for distribution, also beginning in 2012, although Young stated that he had known Mondragon for five or six years.

In preparation for sentencing, the probation office prepared a presentence report that concluded that Mondragon was accountable for at least 26 kilograms of methamphetamine, resulting in a base offense level of 38. The report also recommended that Mondragon receive a three-level enhancement under U.S.S.G. § 3B1.1(b) for being a manager or supervisor in the drug-trafficking conspiracy and that he receive a two-level enhancement under § 2D1.1(b)(1) because he "possessed a firearm during the course of the conspiracy." The resulting offense level of 43, when combined with Mondragon's

3

Criminal History Category I, resulted in a Guidelines recommended sentence of life imprisonment.

In connection with the weapon enhancement, the presentence report noted that during a debriefing with law enforcement officers, Carroll reported that he had seen "Mondragon take apart or 'break down' a revolver pistol while at Carroll's residence." The report also noted that Carroll had indicated that Mondragon had told him that he "had killed two individuals from his town and could not return," a statement corroborated by Mondragon himself, who acknowledged that "he [had] attempted to intimidate customers in order to collect money faster, by telling stories of [having] kill[ed] people in Mexico." The report further noted that, while the conspiracy was ongoing, Mondragon made threatening statements in telephone calls to Carroll regarding other coconspirators, including Young. Finally, the report noted that Young had also told officers that he had previously seen Mondragon "with at least two handguns."

Mondragon objected to the two-level weapon enhancement, arguing that "the firearm in question had no relationship to any drugs." And his counsel argued at sentencing that, while the presentence report indicated that Carroll had stated that he had seen Mondragon "taking a pistol apart and cleaning it" and that Young had stated that he had seen Mondragon with firearms a couple of times in the past, there was "no indication" in either of the coconspirators' statements that the weapons "had anything to do with drugs [or] that there were any drugs around" at the time. As counsel summarized:

4

So we would argue that, you know, while, yes, there is some minimal evidence that at some point in time in his life he may have, you know, touched a firearm or cleaned one, there is no credible evidence or no evidence at all that it had anything at all to do with any drugs and that this enhancement should not apply.

The district court overruled Mondragon's objection, "finding that the information from both of the co-conspirators represents a preponderance of evidence on that question."  After the court adopted the presentence report and concluded that the probation office had accurately calculated Mondragon's advisory sentence as life imprisonment, the court, after applying the 18 U.S.C. § 3553 factors, concluded that a life sentence was not warranted and accordingly imposed a downward-variance sentence of 360 months' imprisonment.

From the district court's judgment dated March 1, 2016, Mondragon filed this appeal, challenging only the district court's application of the two-level enhancement for possession of a weapon.

II

Mondragon argues that the district court clearly erred in applying the two-level weapon enhancement under U.S.S.G. § 2D1.1(b)(1) because the government failed to present evidence showing that his "possession of [a] firearm had [any] relation to drug trafficking activity."  In making this argument, he relies on *United States v. McAllister*, 272 F.3d 228 (4th Cir. 2001), which reversed the application of the weapon enhancement under § 2D1.1(b)(1) because "[w]ithout a description by [the witness] of the circumstances under which he saw [the defendant] possess handguns, the district court

5

could only speculate regarding whether [the witness] ever observed [the defendant] in possession of a handgun during a drug transaction," *id*. at 234. He maintains that the same is true here, as the government failed to establish the necessary relationship between his possession of a firearm and his offense of conviction.

The Sentencing Guidelines provide that when sentencing a defendant convicted of drug offenses, the defendant's base offense level should be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The commentary to this provision explains that the enhancement "reflects the increased danger of violence when drug traffickers possess weapons" and "should be applied if the weapon *was present*, unless it is clearly improbable that the weapon was connected with the offense." *Id*. § 2D1.1(b)(1) cmt. n.11(A) (emphasis added). The commentary goes on to provide, as an example, that the enhancement "would not be applied if the defendant, arrested at [his] residence, had an unloaded hunting rifle in the closet." *Id.* Thus, while the Guidelines' text focuses on the weapon's *possession*, the commentary explains that the enhancement applies if the weapon was "*present*," unless not "*connected with the offense*," making clear, by negative pregnant, that the weapon must be *connected with the offense*. Accordingly, we have held that "[t]he enhancement is proper when 'the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction.'" *United States v. Slade*, 631 F.3d 185, 189 (4th Cir. 2011) (quoting *United States v. Manigan*, 592 F.3d 621, 628–29 (4th Cir. 2010)).

6

The government bears the initial burden of proving, by a preponderance of the evidence, that the weapon was possessed in connection with the relevant illegal drug activity. *See Manigan*, 592 F.3d at 628, 630. To do so, however, it need not prove "precisely concurrent acts," such as a "gun in hand while in the act of storing drugs [or] drugs in hand while in the act of retrieving a gun." *United States v. Johnson*, 943 F.2d 383, 386 (4th Cir. 1991) (per curiam). Rather, the government need prove only that the weapon was "present," which it may do by establishing "'a temporal and spatial relation' linking 'the weapon, the drug trafficking activity, and the defendant.'" *United States v. Bolton*, _____ F.3d _____, No. 16-4077, 2017 WL 2468720, at *4 (4th Cir. June 7, 2017) (quoting *United States v. Clark*, 415 F.3d 1234, 1241 (10th Cir. 2005)); *see also, e.g., McAllister*, 272 F.3d at 234 ("In order to prove that a weapon was *present*, the Government need show only that the weapon was possessed *during* the relevant illegal drug activity" (emphasis added)). If the government carries its burden, the sentencing court presumes that the weapon was possessed in connection with the relevant drug activity and applies the enhancement, unless the defendant rebuts the presumption by showing that such a connection was "clearly improbable." U.S.S.G. § 2D1.1(b)(1) cmt. n.11(A); *see also Slade*, 631 F.3d at 189; *Manigan*, 592 F.3d at 630 n.8. In attempting to make this showing, the defendant may rely on "circumstantial evidence, such as the type of weapon involved and its location or accessibility." *Bolton*, _____ F.3d at _____, 2017 WL 2468720, at *4.

Applying these principles, we conclude that the government met its burden of presenting sufficient evidence from which the district court could find that Mondragon's

possession of a firearm was related to his drug-trafficking activity in that the firearm was *present* — that is, it was temporally and spatially related to the activity. First, as to the temporal aspect, the record shows that the drug-trafficking conspiracy of which Mondragon was convicted began in 2012 and was ongoing until his arrest in June 2014. Moreover, Carroll, who knew Mondragon *only during the time period of the conspiracy*, described seeing Mondragon "take apart or 'break down' a revolver pistol while at Carroll's residence." Because this incident necessarily took place during the drug-trafficking conspiracy, this evidence satisfied the temporal requirement. Carroll's statement was also sufficient to establish a spatial or qualitative link between Mondragon's firearm possession and his drug-trafficking activity. While there was no direct evidence that Mondragon was at Carroll's house to further their drug-trafficking conspiracy, the circumstantial evidence supports such a finding. Mondragon himself acknowledged that Carroll was "his closest associate in [the] drug trafficking organization," and the record indicates that their relationship began and continued on the basis of their drug-trafficking activities. It was thus reasonable for the district court to infer that Mondragon's visit to Carroll's house was related to those ongoing activities, an inference that is only reinforced by the evidence that Mondragon intended, as part of the conspiracy, "to intimidate customers in order to collect money faster." Indeed, Mondragon's act of breaking down his revolver while at Carroll's house — along with his statement to Carroll that he "had killed two individuals from his town [in Mexico] and could not return" and his practice of making threatening statements to Carroll regarding other coconspirators — can be viewed as a pattern of intimidation.

8

We thus conclude that the government presented sufficient evidence from which the district court could find, by a preponderance of the evidence, that Mondragon's possession and display of a revolver pistol while at the house of his closest drug-trafficking associate bore a sufficient relationship to his ongoing drug-trafficking conspiracy to link the firearm temporally and spatially to the conspiracy. Because Mondragon did not even attempt to rebut the government's showing by establishing that it was "clearly improbable" that his possession of the firearm at Carroll's residence was connected with the conspiracy offense, the district court did not clearly err in applying the enhancement.

Mondragon's reliance on *McAllister* provides him with little to no support. In *McAllister*, the defendant was sentenced for possession with intent to distribute cocaine *on a particular date,* and the district court applied the weapon enhancement based on the testimony of one of the defendant's drug suppliers, who said simply that he saw the defendant with handguns "on many occasions." 272 F.3d at 233. In reversing the district court's application of the weapon enhancement, we said that the district court clearly erred because the witness never stated that he "saw McAllister with a handgun *during* a narcotics transaction," and "[w]ithout a description by [the witness] of the circumstances under which he saw McAllister possess handguns, the district court could only speculate regarding whether [the witness] ever observed McAllister in possession of a handgun *during a drug transaction*." *Id*. at 234 (emphasis added). But unlike McAllister, who was convicted for an offense committed on a single date, Mondragon was convicted of conspiracy that continued over the period of some two and one-half years. And, as noted

9

already, Carroll's testimony about seeing Mondragon with a firearm could have only referred to an incident that occurred *during the course of the conspiracy*. To be sure, coconspirator Young also said that he saw Mondragon with handguns, but his testimony was unlimited in time, referring only to the past, which included a time period before the conspiracy, since Young and Mondragon had known each other for five to six years. Accordingly, Young's testimony alone would not have been sufficient to show possession *during* the conspiracy, but Carroll's testimony clearly sufficed.

III

At oral argument, Mondragon argued for the first time that the government failed to show adequately that he possessed a weapon at all because it relied solely on the presentence report's summary of his coconspirators' statements to law enforcement officers, instead of testimony presented in court.

While it is doubtful that Mondragon appropriately preserved this argument, *see IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 308 (4th Cir. 2003) ("Failure to present or argue assignments of error in opening appellate briefs constitutes a waiver of those issues"), we nonetheless conclude that it lacks merit.

It is well established that a court may, for purposes of sentencing, consider "any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy." *United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010). Moreover, the defendant bears "an affirmative duty" to show "that the information in the presentence report is unreliable,

and articulate the reasons why the facts contained therein are untrue or inaccurate." *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990). Because Mondragon did not attempt to make this showing at sentencing — indeed, he conceded that his coconspirators' statements, as described in the presentence report, provided "some minimal evidence" that he had previously possessed firearms — the court was entitled to credit the unchallenged witness statements summarized in the presentence report when determining whether the enhancement provided in U.S.S.G. § 2D1.1(b)(1) was applicable. *See* Fed. R. Crim. P. 32(i)(3) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact").

\*     \*     \*

Accordingly, we conclude that the district court did not clearly err in finding that Mondragon possessed a firearm within the meaning of § 2D1.1(b)(1) and therefore affirm the district court's judgment.

AFFIRMED

11