**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-4471**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TOVIS ATION RICHARDSON,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C Dever, III, District Judge.  (5:22-cr-00313-D-1)

Argued:  December 11, 2024                          Decided:  July 28, 2025

Before WYNN and THACKER, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by published opinion.   Senior Judge Floyd wrote the opinion in which Judge Wynn and Judge Thacker joined.

**ARGUED:**  Michelle Ann Liguori, ELLIS & WINTERS, LLP, Raleigh, North Carolina, for Appellant.  Jacob D. Pugh, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Chelsea A. Pieroni, ELLIS & WINTERS, LLP, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

FLOYD, Senior Circuit Judge:

In 2023, pursuant to a written plea agreement, Tovis Ation Richardson pled guilty to two counts: (1) conspiracy to distribute and possess with intent to distribute methamphetamine; (2) possession with intent to distribute methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 846. He later received a 240-month sentence.

In this direct appeal, Richardson raises two issues: (1) whether the district court erred in applying a sentencing enhancement for firearm possession; (2) whether counsel provided ineffective assistance by failing to object to this enhancement.

As to the first issue, we are unable to address its merits because Richardson waived his right to bring the argument. As to the second, we find that it does not conclusively appear in the record that counsel provided ineffective assistance, as is required on direct appeal. We therefore affirm the judgment of the district court.

I.

A.

In August 2021, police learned that Richardson and two co-conspirators were distributing narcotics in Johnston County, North Carolina. Between August 26, 2021 and October 14, 2021, a confidential informant purchased methamphetamine from Richardson eight times. On at least three of these occasions, Richardson dealt from his car.

On October 8, 2021, investigators pulled Richardson over. He agreed to accompany them to his home, where police executed a search warrant. Police recovered methamphetamine, marijuana, cell phones, $40,590 in cash, a digital scale, and a box of

ammunition of various calibers and gauges.  Police also recovered a 12-gauge shotgun from the trunk of Richardson's car, which was parked on the property.  The shotgun was a gift from his father.

Richardson was subsequently charged in the Eastern District of North Carolina with (1) conspiracy to distribute and possess with intent to distribute methamphetamine and (2) possession with intent to distribute methamphetamine.  *See* 21 U.S.C. §§ 841(a)(1), 846. He retained counsel and, pursuant to a written plea agreement, pled guilty to both counts.

Important here, Richardson's plea agreement contains an appeal waiver.  It states: "The Defendant agrees: … To waive knowingly and expressly the right to appeal the conviction and whatever sentence is imposed on any ground … excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of [his] guilty plea."  J.A. 59.

### B.

During Richardson's sentencing, the district court relied on a presentence report (PSR).  The PSR calculated zero criminal history points and a base offense level of 36.  It then applied two sentencing enhancements: one under U.S.S.G. § 2D1.1(b)(1) for firearm possession; and another under § 2D1.1(b)(12) for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance."  Each enhancement increased the base offense level by two points.

The PSR also applied two sentencing reductions: one under § 3E1.1(a) for "acceptance of responsibility"; and another under § 3E1.1(b) for "timely notifying

3

authorities of his intention to enter a plea of guilty." Together, they decreased the base offense level by three points. The PSR ultimately calculated a total offense level of 37. The corresponding Sentencing Guidelines range was 210-to-262 months.

Neither party objected to the PSR, and both recommended a 240-month sentence. The district court adopted the PSR and imposed a 240-month sentence.

## C.

This appeal followed. As previewed, Richardson raises two issues: (1) whether the district court erred in applying a sentencing enhancement under § 2D1.1(b)(1) for firearm possession; (2) whether counsel provided ineffective assistance by failing to object to this enhancement. The government responds: Richardson's appeal waiver covers the first issue; and it does not conclusively appear in the record that counsel provided ineffective assistance, which defeats the second issue.

## II.

We begin by determining whether Richardson's appeal waiver is enforceable. We conduct this analysis *de novo*. *United States v. Carter*, 87 F.4th 217, 223–24 (4th Cir. 2023) (citing *United States v. Boutcher*, 998 F.3d 603, 608 (4th Cir. 2021)). When, as here, "the government seeks to enforce an appeal waiver and has not breached the plea agreement, we will enforce the waiver if it is valid and if the issue being appealed falls within its scope." *Id.* (quoting *United States v. Beck*, 957 F.3d 440, 445 (4th Cir. 2020)).

## A.

First, validity.  "A waiver is valid if 'the defendant knowingly and intelligently agreed to waive the right to appeal.'"  *United States v. Soloff*, 993 F.3d 240, 243 (4th Cir. 2021) (quoting *United States v. Blick*, 408 F.3d 162, 169 (4th Cir. 2005)).  To analyze these factors, "we consider 'the totality of the circumstances,' including the experience and conduct of the defendant, his educational background, and his knowledge of the plea agreement and its terms."  *United States v. McCoy*, 895 F.3d 358, 362 (4th Cir. 2018) (quoting *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012)). "Generally though, 'if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid.'"  *Id.* (quoting *Thornsbury*, 670 F.3d at 537).

Here, Richardson does not contest that his waiver was knowing and intelligent.  *See* Oral Arg. 0:45–2:32.  Our review of the record supports this concession.  His waiver is therefore valid.

## B.

Next, scope.  "We use traditional principles of contract law to determine whether an issue falls within the scope of a valid waiver."  *Carter*, 87 F.4th at 224 (citing *United States v. Yooho Weon*, 722 F.3d 583, 588 (4th Cir. 2013)).  Under this framework, we must find the waiver "clearly and unambiguously applicable to the issues raised by the defendant on appeal."  *Id.* (quoting *Yooho Weon*, 722 F.3d at 588).

5

1.

The first issue that Richardson raises is the application of the firearm enhancement, § 2D.1.1(b)(1).  Richardson's waiver clearly and unambiguously applies to this issue.  His waiver explicitly forecloses appeals "on any ground," including appeals "pursuant to 18 U.S.C § 3742."  J.A. 59.  § 3742(a)(2) would otherwise permit an appeal based on "an incorrect application of the sentencing guidelines."

In light of this plain language, Richardson pivots to arguing that the "failure to correct [the firearm enhancement] would result in a miscarriage of justice."  Reply Br. 14.  More specifically, he argues that the enhancement "could render [him] ineligible for a sentencing reduction" under § 4C1.1, which became effective after his plea and permits a two-point offense-level reduction for certain defendants with zero criminal history points. *Id.* at 14, 19–20 (discussing § 4C1.1 and its retroactive application).

Richardson is correct that this Court "will refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice." *United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016) (citing *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005)).  But, for one, we only find miscarriages of justice in "a narrow class of claims." *United States v. Smith*, 134 F.4th 248, 261 (4th Cir. 2025) (quoting *Blick*, 408 F.3d at 171) (finding miscarriage of justice because sentencing court had a regular practice of "omitting necessary information in both plea and sentencing hearings, disregarding proper procedure, and relying on appeal waivers to shield procedurally unreasonable sentences from review"); *see Adams*, 814 F.3d at 183 (finding miscarriage of justice because defendant made "a valid claim of actual innocence").

6

For another, a defendant "cannot ... ask to re-bargain the waiver of his right to appeal because of changes in the law." *United States v. Copeland*, 707 F.3d 522, 529 (4th Cir. 2013) (quoting *Blick*, 408 F.3d at 170); *see Johnson*, 410 F.3d at 152–53 ("Johnson's contention—that a defendant cannot waive the right to an appeal based on subsequent changes in the law—though reasonable, is foreclosed by Supreme Court precedent" (citing *Brady v. United States*, 397 U.S. 742, 757 (1970))). "A plea agreement, like any contract, allocates risk." *Johnson*, 410 F.3d at 153. "And the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompan[ies] a guilty plea." *Id.* (quoting *United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005)).

Applying these principles here, we conclude that Richardson's alleged "miscarriage of justice" is merely a re-packaged Guidelines claim that aims to re-bargain the terms of his waiver. Therefore, even assuming his eligibility for a sentencing reduction under § 4C1.1, our "failure to correct" this issue would not result in a miscarriage of justice.[1]

2.

The second issue that Richardson raises is ineffective assistance—specifically, his counsel's failure to object to the firearm enhancement. His waiver does not cover this

---

[1] In a footnote, Richardson also claims that he is "actually innocent of the acts required for a firearm enhancement." Reply Br. 20 n.8. "To succeed on actual innocence grounds, however, '[Richardson] must demonstrate actual factual innocence of the offense of conviction,'" not the enhancement. *United States v. Pettiford*, 612 F.3d 270, 282–84 (4th Cir. 2010) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999)); *see Adams*, 814 F.3d at 182–83 (analyzing same in appeal waiver context).

issue.  Although his waiver explicitly bars appeals "on any ground," it carves out two exceptions: claims of "ineffective assistance of counsel or prosecutorial misconduct not known to [Richardson] at the time of [his] guilty plea."  J.A. 59.  The government does not claim that this issue was known to Richardson at the time of his plea.  We therefore assess Richardson's ineffective assistance claim in the next section.

## III.

We review a claim of ineffective assistance *de novo*.  *United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022) (en banc).  To establish ineffective assistance, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

When, as here, the claim is made on direct appeal, it must "*conclusively appear[] in the trial record itself* that the defendant was not provided ... effective representation." *Freeman*, 24 F.4th at 326 (quoting *United States v. Fisher*, 477 F.2d 300, 302 (4th Cir. 1973)); *see United States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008) ("Ineffective assistance claims are generally not cognizable on direct appeal … 'unless it conclusively appears from the record that defense counsel did not provide effective representation.'" (quoting *United States v. Richardson,* 195 F.3d 192, 198 (4th Cir. 1999))).

## A.

We begin by examining the first prong: deficient performance.  To establish deficient performance, "the defendant must show that counsel's representation fell below

8

an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.   "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see Cox v. Weber*, 102 F.4th 663, 672 (4th Cir. 2024) (same).

Richardson claims that counsel's performance was deficient because he failed to object to the firearm enhancement (both when reviewing the PSR and at sentencing). Richardson is correct that "counsel may be constitutionally required to object when there is relevant authority *strongly suggesting* that a sentencing enhancement is not proper." *Freeman*, 24 F.4th at 326 (quoting *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017) (emphasis added)).  We therefore consider the merits of this objection.

1.

The firearm enhancement states: "If a dangerous weapon (including a firearm) was possessed, increase [the offense level] by 2 levels."  U.S.S.G § 2D1.1(b)(1).  To apply this enhancement, the government must show, "by a preponderance of the evidence, that the weapon was possessed in connection with the relevant illegal drug activity." *United States v. Mondragon*, 860 F.3d 227, 231 (4th Cir. 2017) (citing *United States v. Manigan*, 592 F.3d 621, 628, 630 (4th Cir. 2010)).  In other words, the government must show that "the defendant possessed a weapon 'in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction.'" *United States v. Bolton*, 858 F.3d 905, 912 (4th Cir. 2017) (quoting *Manigan*, 592 F.3d at 628–29).

9

Significant here: If "the underlying offense is conspiracy to distribute drugs, we have held that discovery of a weapon 'in a place where the conspiracy was carried out or furthered' is sufficient to link the weapon to the conspiracy." *Id.* (quoting *United States v. Apple*, 962 F.2d 335, 338 (4th Cir. 1992)); *see, e.g.*, *United States v. Cabrera*, 837 Fed. Appx. 981, 986 (4th Cir. 2020) (argued but unpublished) (Agee, J.) (same); *United States v. Hairston*, 46 F.3d 1127, 1995 WL 54010, at *7 (4th Cir. 1995) (argued but unpublished) (same). Put differently, while "there must be some geographical and temporal proximity between the weapon and the commission of the offense," "when the offense committed is conspiracy, these proximity conditions are met when the weapon is discovered in a place where the conspiracy was carried out or furthered." *Apple*, 962 F.2d at 338.

Our conspiracy-based holdings do not stand alone. *See, e.g.*, *United States v. Garcia*, 703 F.3d 471, 477 (8th Cir. 2013) ("We have held the government demonstrates the required connection between the weapon and the drug activity when the weapon 'was found in the same location where drugs or drug paraphernalia were stored *or* where part of the conspiracy took place.'" (quoting *United States v. Young*, 689 F.3d 941, 946 (8th Cir. 2012) (emphasis added))); *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006) ("conspiracy … permits the application of the § 2D1.1(b)(1) enhancement if the firearms are found in a place where acts in furtherance of the conspiracies took place"); *United States v. Martinez*, 77 Fed. Appx. 490, 500 (10th Cir. 2003) (Henry, J.) (unpublished) (the government need only show that the firearm "was discovered in a place where the conspiracy was carried out or furthered").

10

Here, the record shows that: (1) Richardson pled guilty to conspiracy to distribute methamphetamine; (2) Richardson used his car to distribute methamphetamine; and (3) police seized a shotgun from the trunk of his car during the conspiracy period. The shotgun was therefore discovered in a place where Richardson's conspiracy was carried out. Under our case law, this is enough for the government to meet its preponderance burden and apply the firearm enhancement. *See Bolton*, 858 F.3d at 912; *Apple*, 962 F.2d at 338.

2.

Richardson, of course, disagrees. He claims that the enhancement was improperly applied and counsel should have objected. We examine his arguments below.

To begin, the parties agree that a successful § 2D1.1(b)(1) objection must show that "it is clearly improbable that the weapon was connected with the offense." *Bolton*, 858 F.3d at 912 (quoting § 2D1.1(b)(1), cmt. n.11(A)). We recognize, however, that this standard (although routinely applied) is taken from the Guidelines commentary. *See id.* In *United States v. Campbell*, we clarified that courts should only look to the commentary when a guideline is "genuinely ambiguous." 22 F.4th 438, 444–45 (4th Cir. 2022) (quoting *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019)). Nevertheless, since *Campbell*, we have continued to apply the "clearly improbable" standard. *See United States v. Banks*, 104 F.4th 496, 524 (4th Cir. 2024).

We see no obvious reason to deviate from this framework, and neither party objects to its use. Therefore, assuming defendants can continue to avoid the firearm enhancement by making a "clearly improbable" showing, we find that, based on the current record,

11

Richardson would have failed to do so.   We examine his three main arguments: (1) the record connects the shotgun to his car, not his drug activities; (2) shotguns are not typically used to aid drug traffickers; and (3) the shotgun may not have been loaded or functional.

a.

First, as to the firearm's location during Richardson's drug activities, again, we have repeatedly held that "discovery of a weapon 'in a place where the conspiracy was carried out or furthered' is sufficient[.]" *Bolton*, 858 F.3d at 912 (quoting *Apple*, 962 F.2d at 338); *see also Mondragon*, 860 F.3d at 232–33 (distinguishing *United States v. McAllister*, 272 F.3d 228 (4th Cir. 2001), which examines possession "on a single date").   As a result, the government need not offer "direct evidence that [the defendant] physically possessed a firearm *during* any drug transaction." *United States v. Gomez-Jimenez*, 750 F.3d 370, 381 (4th Cir. 2014) (emphasis added).

Based on this principle, courts regularly affirm § 2D1.1(b)(1) enhancements where police seize firearms, but no drugs, from conspiracy-connected vehicles. *See, e.g., United States v. Perez-Guerrero*, 334 F.3d 778, 783–84 (8th Cir. 2003).   In a case strikingly similar to Richardson's, the Fifth Circuit upheld this enhancement after police "found a shotgun in the trunk of [the defendant's] Camry," and "witness testimony established that [he] used the vehicle to transport crack cocaine." *United States v. Brown*, 217 F.3d 247, 261 (5th Cir. 2000), *vacated on other grounds*, 531 U.S. 1136 (2001).

Here, Richardson does not dispute that he used his car to distribute methamphetamine or that police found a shotgun in the trunk of this car.  He only disputes

12

that the shotgun was in his car at the time of his transactions.  *See* Reply Br. 4 ("While the presentence report indicates that Mr. Richardson sold drugs in his car on [three specific dates], there is no evidence in the presentence report or elsewhere that the shotgun was in his trunk on any of those dates.").  Richardson therefore seeks unnecessary evidence: the government need not connect the shotgun to any particular transaction; the shotgun's presence in his conspiracy-connected car is enough.[2]

b.

Next, as to firearm type, we have acknowledged that "a drug trafficker is much more likely to utilize a handgun—as opposed to a rifle or long gun—due to size and concealability."  *Manigan*, 592 F.3d at 629.  In fact, like Richardson, we have looked to the Guidelines commentary and acknowledged that "the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the

---

[2] As noted, Richardson has never contested that the shotgun was seized from the same car that he used to distribute drugs, and we do not consider arguments that Richardson failed to raise in his opening brief.  *See United States v. Gallagher*, 90 F.4th 182, 189 n.1 (4th Cir. 2024).  But, to the extent that the record *infers* his use of the same car, (1) "the Government is entitled to rely on circumstantial evidence to carry its burden," *Manigan*, 592 F.3d at 629, and (2) we have held that a location's connection to a conspiracy can be inferred.  For example, in *Mondragon*, we affirmed a § 2D1.1(b)(1) enhancement based on testimony about the defendant's "possession and display of a revolver pistol while at the house of his closest drug-trafficking associate."  860 F.3d at 232.  There was "no direct evidence that [he] was at [the] house to further their drug-trafficking conspiracy," but we found it "reasonable for the district court to infer [as much]."  *Id.*  We applied the same reasoning in *Banks*.  *See* 104 F.4th at 524 (affirming enhancement based on firearm found in defendant's home despite no mention of home's role in conspiracy).  That said, if Richardson has reason to believe that a different car was used during his transactions, he could pursue this argument in a 28 U.S.C. § 2255 motion.

13

closet." *Bolton*, 858 F.3d at 912 (quoting § 2D1.1(b)(1), cmt. n.11(A)).  We repeat that courts should only look to the commentary when a guideline is "genuinely ambiguous." *Campbell*, 22 F.4th at 444–45 (quoting *Kisor*, 588 U.S. at 559).  However, even assuming such ambiguity, neither this commentary specifically nor Richardson's weapon-type argument generally shows that the enhancement was improper.

We have repeatedly applied § 2D.1.1(b)(1) to defendants who possess shotguns. *See, e.g.*, *Bolton*, 858 F.3d at 909, 913; *United States v. Falesbork*, 5 F.3d 715, 719–21 (4th Cir. 1993); *United States v. Boyles*, 604 Fed. Appx. 261, 263 (4th Cir. 2015) (unpublished); *United States v. Holmes*, 339 Fed. Appx. 334, 338 (4th Cir. 2009) (unpublished); *United States v. Brock*, 253 Fed. Appx. 260, 262 & n.2 (4th Cir. 2007) (unpublished); *United States v. Weymouth*, 45 Fed. Appx. 311, 313 (4th Cir. 2002) (unpublished).

Other courts have done the same.  *See, e.g.*, *Brown*, 217 F.3d at 261; *United States v. Rodriguez-Guerrero*, 805 F.3d 192, 196 (5th Cir. 2015); *United States v. Smith*, 308 F.3d 726, 746 (7th Cir. 2002); *United States v. Frazier*, 280 F.3d 835, 853 (8th Cir. 2002); *United States v. Calhoun*, 49 F.3d 231, 236 (6th Cir. 1995).  Notably, the Tenth Circuit affirmed a § 2D.1.1(b)(1) enhancement after police discovered an "unloaded shotgun … in an inoperable car parked outside [the defendant's] residence."  *United States v. Hall*, 473 F.3d 1295, 1303 (10th Cir. 2007).

Perhaps most tellingly, however, our own case law goes further than this case requires.  In *Bolton*, we affirmed a shotgun-based § 2D.1.1(b)(1) enhancement despite evidence that the defendant regularly hunted.  *See* 858 F.3d at 910, 913.  Here, Richardson does not claim to hunt.  His argument that shotguns aid hunters therefore does little work.

14

c.

Finally, as to the shotgun's immediate operability, we have long made clear that § 2D1.1(b)(1) can be applied when a firearm is unloaded. *Manigan*, 592 F.3d at 362 n.10; *United States v. Harris*, 128 F.3d 850, 853 (4th Cir. 1997) ("the mere fact that a weapon is unloaded cannot prevent a court from enhancing a sentence under Section 2D1.1(b)(1)"). In doing so, we have recognized that "[e]ven an unloaded firearm enhances the risk of violence. Others often do not know whether a weapon is loaded or not. The owner may still employ an unloaded weapon to intimidate others, and even an unloaded firearm may encourage others to resort to weapons in response." *Harris*, 128 F.3d at 853.

Relying on this same reasoning, courts have also applied § 2D1.1(b)(1) to inoperable firearms. *See United States v. Leyva*, 916 F.3d 14, 27 (D.C. Cir. 2019) ("the term 'firearm' under USSG 2D1.1(b) includes inoperable as well as operable firearms," and therefore that "this particular pistol was an inoperable collector's item … is of no moment" (citing *United States v. Burke*, 888 F.2d 862, 869 (D.C. Cir. 1989))); *United States v. Peroceski*, 520 F.3d 886, 889 (8th Cir. 2008) ("The gun need not even be operable for it to be connected to the offense."); *United States v. Michael*, 220 F.3d 1075, 1076 (9th Cir. 2000) ("whether an object constitutes a dangerous weapon depends more on the object's ability to incite fear and violence because it appears to be dangerous than on its latent capability," and "the display of an inoperable gun instills fear in the average citizen and establishes the prospect of an immediate, violent response" (citing *United States v. Smith,* 905 F.2d 1296, 1300 (9th Cir. 1990))); *cf. United States v. Hamrick*, 43 F.3d 877,

15

882–83 & n.8 (4th Cir. 1995) (en banc) (finding inoperable bomb "dangerous" and relying on case law finding inoperable firearms "dangerous").

Simply put: Richardson is correct that the record does not confirm that his shotgun was loaded or operable, but it need not do so for § 2D.1.1(b)(1) to apply. This is especially true when nothing in the record indicates that the shotgun *appeared* inoperable.

3.

In sum, when we analyze Richardson's § 2D.1.1(b)(1) objection, we easily find each of his arguments unpersuasive. And three weak arguments do not create a strong one.

We acknowledge (and emphasize) that, to establish deficient performance, Richardson need not show that his objection would have been successful. But we find this analysis informative as Richardson still faces an undoubtedly high bar. He must show that it "*conclusively appears in the trial record itself*" that counsel was deficient. *Freeman*, 24 F.4th at 326 (quoting *Fisher*, 477 F.2d at 302). And, when analyzing the alleged deficiency, our "scrutiny of counsel's performance 'must be highly deferential.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). "[W]e 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689).

In *Freeman*, we found counsel deficient because he "was unequivocally wrong on the law." *Id.* "[A] cursory 'investigation' would have revealed that [his] conclusion was wrong, and any reasonably competent attorney would not have made the same mistake." *Id.* at 330. Therefore, his failure to object "made no sense or was unreasonable," and the

16

usual presumption of deference could not apply. *Id.* at 330 (quoting *Vinson v. True*, 436 F.3d 412, 419 (4th Cir. 2006)). Even then, our dissenting colleagues expressed concern over "taking the extraordinary step of finding ineffective assistance of counsel on direct appeal," a step that "almost never happens." *Id.* at 332–33 (Quattlebaum, J., dissenting).

Here, counsel was not "unequivocally wrong on the law." More aptly, there is no "relevant authority strongly suggesting that [the] enhancement is not proper." *Id.* at 326 (majority opinion) (quoting *Carthorne*, 878 F.3d at 466). In fact, our case law investigation revealed the opposite. Therefore, Richardson's counsel could have reasonably concluded that his objection would fail. And reasonable decisions of counsel are not constitutionally deficient decisions. *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). If we were to find the opposite here, and thereby hold that counsel is constitutionally deficient when he does not raise what is likely a losing objection, we risk setting a dangerously low bar for reasonable performance, especially on direct appeal.

Admittedly, unlike in *Freeman*, the record does not actually tell us why counsel decided not to object. But this lack of evidence does not benefit Richardson. "Without any statement from counsel on the record," we have found it "unfair to adjudicate [deficient performance]." *Freeman*, 24 F.4th at 331 (quoting *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991)). This is because even "seemingly unusual or misguided action by counsel" may have "had a sound strategic motive or was taken because the counsel's alternatives were even worse." *Massaro v. United States*, 538 U.S. 500, 505 (2003).

17

As a result, we see no reason to take the "extraordinary step" of finding deficient performance at this stage. With "no conclusive evidence of ineffective assistance on the face of this record, we conclude that [Richardson's] claim should be raised, if at all, in a 28 U.S.C. § 2255 motion." *United States v. Faulls*, 821 F.3d 502, 508 (4th Cir. 2016); *Freeman*, 24 F.4th at 331 (acknowledging that we "typically review ineffective assistance of counsel claims on collateral review" so we can "benefit from a fully developed record").

In making this conclusion, we acknowledge that there may be some merit to Richardson's overall claim that he did not receive $25,000 worth of counsel. But, under *Strickland*, defendants cannot baldly assert that counsel was deficient or undeserving of a fee. Instead, they "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690. Here, the sole omission that Richardson advanced on direct appeal does not succeed. *Cf. Williams v. Giant Food Inc.*, 370 F.3d 423, 430 n.4 (4th Cir. 2004) (appellate assertions not supported by argument are deemed abandoned).

## B.

Because Richardson's ineffective assistance claim fails to meet the first *Strickland* prong (deficient performance), we need not examine the second (prejudice).

## IV.

Based on the foregoing, we affirm the judgment of the district court.

*AFFIRMED*

18