**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4077**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LASHAUN CHRISTOPHER BOLTON,

Defendant - Appellant.

**No. 16-4078**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LASHAUN CHRISTOPHER BOLTON,

Defendant - Appellant.

Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Jr., Chief District Judge. (1:15-cr-00243-WO-1; 1:14-cr-00433-WO-4)

Argued: May 11, 2017                                                 Decided: June 7, 2017

Before NIEMEYER, MOTZ, and THACKER, Circuit Judges.

———————————

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Judge Niemeyer and Judge Motz joined.

———————————

**ARGUED:** Cheryl Denise Andrews, HOLTON LAW FIRM, PLLC, Winston-Salem, North Carolina, for Appellant. Sandra Jane Hairston, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

———————————

THACKER, Circuit Judge:

Lashaun Christopher Bolton ("Appellant") appeals his consolidated sentence for convictions in two separate cases -- one involving marijuana distribution and the other involving cocaine distribution. Following his indictment and arrest on the marijuana charges, law enforcement discovered firearms, cash, and more marijuana in Appellant's bedroom. Then, while released on bond for the marijuana charges, Appellant was arrested on the cocaine charges.

At the consolidated sentencing hearing, Appellant attempted to show that the firearms were connected to hunting in order to avoid a sentence enhancement for possessing a firearm in connection with drug distribution. But the district court rejected this claim and applied the enhancement. Next, although Appellant sought an offense-level reduction given his lack of criminal history, the district court also rejected this argument, holding Appellant was ineligible for the reduction because he possessed a firearm in connection with his offense. Additionally, given Appellant's arrest while released on bond, the district court refused to reduce Appellant's offense level for acceptance of responsibility, despite cooperation he provided the Government. Finally, the court varied upward from Appellant's Sentencing Guideline range by 40 months.

Appellant now challenges each of these sentencing determinations. Finding no reversible error, we affirm.

## I.

### A.

On November 24, 2014, a grand jury in the Middle District of North Carolina returned a multi-count indictment charging multiple defendants, including Appellant, with conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (the "Marijuana Indictment"). Specifically, the Marijuana Indictment charged Appellant with conspiring to distribute marijuana and using a communication facility to facilitate the conspiracy. On December 4, 2014, Appellant was arrested pursuant to the Marijuana Indictment. He consented to a search of his residence. During the search, a 12-gauge shotgun and 22-250 bolt action rifle were discovered in Appellant's bedroom along with boxes of ammunition, approximately 400 grams of marijuana, and $912 in cash. A records search indicated that the shotgun was reported stolen. On December 16, 2014, Appellant was released on bond.

On February 25, 2015, Appellant pled guilty to conspiracy to distribute marijuana and using a communication facility to facilitate drug trafficking per the Marijuana Indictment. The factual basis in support of the plea agreement stated that throughout September 2012, law enforcement intercepted cellular phone calls between Appellant and another individual indicating that the two conspired to distribute around eight pounds of marijuana "during the period alleged in the indictment." J.A. 44–47.[1] The conspiracy

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

alleged in the indictment lasted "[f]rom in or about 2012, continuing up to and including in or about February 2013." *Id.* at 15.[2]  Following the guilty plea, the district court also granted Appellant's motion to modify his terms of release to remove an electronic location monitor so as to allow him to return to work.  The court scheduled a sentencing hearing on the Marijuana Indictment for June 3, 2015.

B.

On April 18, 2015, Drug Enforcement Administration agents discovered Appellant was involved in cocaine distribution.  As a result, on April 21, 2015, the court revoked Appellant's bond and issued a warrant for his arrest.  Two days later, on April 23, 2015, Appellant surrendered to law enforcement.  After Appellant's surrender, on May 6, 2015, he met with law enforcement for debriefing and provided information about the other individuals involved in the cocaine distribution.  On May 18, 2015, the district court continued Appellant's sentencing for the marijuana charges to August 26, 2015.

On June 30, 2015, while Appellant was awaiting sentencing on the marijuana charges, a grand jury in the Middle District of North Carolina returned a second indictment against Appellant and other defendants, charging them with conspiracy to distribute 500 grams or more of a substance containing cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 and 841 (the "Cocaine Indictment").

---

[2] On September 17, 2012, law enforcement stopped a vehicle in which Appellant was a passenger for a traffic violation.  *See* J.A. 46.  Law enforcement discovered 428 grams of marijuana in the vehicle along with $5,942 in cash on Appellant's person; Appellant was arrested after admitting the marijuana was his.  *See id.*

5

On August 7, 2015, Appellant pled guilty to the Cocaine Indictment. The factual basis for Appellant's plea provided that on April 16, 2015, Appellant sold 3.4 grams of marijuana to an individual working as a confidential informant and offered to sell the individual a kilogram of cocaine hydrochloride. Then, over the next two days, Appellant facilitated a transaction of two kilograms of cocaine to an undercover officer.

C.

The district court consolidated Appellant's marijuana and cocaine cases and set a sentencing hearing for January 12, 2016. Pursuant to the United States Sentencing Guidelines (the "Guidelines"), the presentence report ("PSR") grouped Appellant's offenses to arrive at a base offense level of 30, established by the amounts of drugs attributable to him. The PSR added two offense levels for possession of a firearm during the offense, and two offense levels for maintaining premises for drug distribution. The PSR did not recommend a downward adjustment for acceptance of responsibility because Appellant did not withdraw from criminal activity after his release on the marijuana charges. The PSR thus arrived at a total offense level of 34.

At the consolidated sentencing hearing, Appellant objected to the proposed drug amounts attributable to him as well as to the enhancements for firearm possession and maintaining premises for drug distribution. Appellant also objected to the PSR's failure to propose downward adjustments for acceptance of responsibility or for a "safety valve"

reduction, which allows departures from otherwise mandatory sentences for qualifying first-time offenders. *United States v. Fletcher*, 74 F.3d 49, 56 (4th Cir. 1996).[3]

In response, the Government presented testimony from an investigating agent to substantiate the amount of drugs attributable to Appellant. To rebut the firearm possession enhancement and support a safety valve reduction, Appellant called his cousin, Santonio Bolton ("Santonio"), who testified that the firearms were for hunting purposes. To corroborate Appellant's hunting scenario, Santonio testified that he grew up hunting with Appellant, and that Appellant acquired the guns in question during hunting season. Santonio also testified that the rifle belonged to another cousin and that Appellant purchased the reportedly stolen shotgun. The defense also submitted a hunting license Appellant purchased in October of 2013 that expired the following year. Further, the defense pointed out that the firearms were discovered outside of the timeframe of the conspiracy alleged in the Marijuana Indictment. Additionally, Appellant argued he was entitled to an offense-level reduction for acceptance of responsibility based on his prompt surrender to authorities, cooperation, and agreement to plead guilty.

The district court sustained Appellant's objection to the amount of drugs attributable to him but overruled each of his remaining objections. As to the firearm possession enhancement, the district court discredited Santonio's testimony and reasoned that although law enforcement discovered the guns outside of the timeframe of illegal activity alleged in the Marijuana Indictment, the surrounding circumstances suggested

---

[3] The PSR did not address Appellant's eligibility for a safety valve reduction.

7

Appellant was dealing marijuana when law enforcement arrested him and discovered the firearms. And "because of the weapon enhancement," the district court held, "the safety valve would not . . . apply." J.A. 178. Finally, the district court declined to adjust Appellant's sentence for acceptance of responsibility because he resumed his criminal activity after his first arrest.

In light of these rulings, the court arrived at a total offense level of 30 and criminal history category of I, resulting in a final Guidelines range of 97 to 121 months' imprisonment. The district court then varied upward from this advisory range and sentenced Appellant to 161 months' imprisonment. To arrive at this sentence, the court imposed 40 months for both counts related to the marijuana charges to run concurrently, and 121 months for the cocaine charges to run consecutive to the sentence for the marijuana charges. Appellant timely appealed.

## II.

"As a general matter, in reviewing any sentence whether inside, just outside, or significantly outside the Guidelines range," we review for an abuse of discretion. *United States v. McDonald*, 850 F.3d 640, 643 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). Pursuant to this standard, we review the district court's legal conclusions de novo and factual findings for clear error. *United States v. Gomez-Jimenez*, 750 F.3d 370, 379–80 (4th Cir. 2014), *as corrected* (Apr. 29, 2014). We first review for procedural errors; "[i]f and only if," we find no such procedural errors may we assess the substantive reasonableness of a sentence.

*McDonald*, 850 F.3d at 643 (alteration in original) (quoting *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009)).

III.

A.

We begin by reviewing two facets of the district court's sentencing procedure: (1) its offense level enhancement pursuant to Guidelines § 2D1.1(b)(1), which allows an enhancement if a firearm "was possessed" in connection with a drug trafficking offense unless the connection between the firearm and the offense was "clearly improbable"; and (2) its refusal to decrease Appellant's offense level pursuant to Guidelines § 2D1.1(b)(17), which allows a safety valve decrease if, in relevant part, a defendant "did not . . . possess a firearm . . . in connection with the offense," § 5C1.2(a)(2). As to procedural sentencing issues, we "must reverse if we find error, unless . . . the error was harmless." *Gomez-Jimenez*, 750 F.3d at 379. A procedural error is harmless if "(1) the district court would have reached the same result even if it had decided the guidelines issue the other way, and (2) the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." *Id.* at 382 (internal quotation marks omitted) (quoting *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011)).

Appellant argues the district court erred on both issues, and even if it did not err on the firearm enhancement issue, the district court erroneously assumed that the enhancement foreclosed a safety valve reduction. We conclude, however, that the district court did not err by imposing the firearm enhancement, and even if the district court erred

9

by assuming it could not grant a safety valve reduction because of the firearm enhancement, any such error was harmless.

1.

For drug trafficking offenses, the Guidelines define various "Specific Offense Characteristics" providing for offense-level enhancements where applicable. *United States v. Manigan*, 592 F.3d 621, 628 (4th Cir. 2010) (quoting U.S.S.G. § 2D1.1(b)). The first of these enhancements reads in full, "If a dangerous weapon (including a firearm) was possessed, increase by two levels." U.S.S.G § 2D1.1(b)(1). With regard to this enhancement, Guidelines commentary indicates that it applies if a defendant possesses a firearm in connection with a drug trafficking offense: "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* cmt. n.11(A). Thus, for the enhancement to apply, the Government carries the initial burden of "proving possession of a weapon in connection with drug activities" by a preponderance of the evidence. *Manigan*, 592 F.3d at 632 n.8. If the Government satisfies this burden, the defendant may avoid the enhancement by showing that the weapon's link to his or her drug activities was "clearly improbable." *Id.*

In order for the Government to meet its burden, it must prove that the defendant possessed a weapon "in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." *Manigan*, 592 F.3d at 628–29 (quoting *United States v. McAllister*, 272 F.3d 228, 233–34 (4th Cir. 2001)). Although the Government need not prove "precisely concurrent" drug trafficking and weapon possession, *United States v. Johnson*, 943 F.2d 383, 386 (4th Cir. 1991), it must at least

10

prove "a temporal and spatial relation" linking "the weapon, the drug trafficking activity, and the defendant," *United States v. Clark*, 415 F.3d 1234, 1241 (10th Cir. 2005) (quoting *United States v. Roederer*, 11 F.3d 973, 982 (10th Cir.1993)) (rejecting enhancement where defendant possessed gun 15 months after offense of conviction but admitted to drug sales two days earlier); *accord United States v. Partida*, 385 F.3d 546, 562 (5th Cir. 2004). In circumstances where the underlying offense is conspiracy to distribute drugs, we have held that discovery of a weapon "in a place where the conspiracy was carried out or furthered" is sufficient to link the weapon to the conspiracy. *United States v. Apple*, 962 F.2d 335, 338 (4th Cir. 1992).

If the Government meets the initial burden, a defendant may prove that such link is clearly improbable by presenting circumstantial evidence, such as the type of weapon involved and its location or accessibility. *See Manigan*, 592 F.3d at 629. For example, courts agree that handguns are more likely to be connected with drug trafficking than long guns. *See id.* (collecting cases). Indeed, commentary to the Guidelines provides such an example: "the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." § 2D1.1 cmt. n.11(A).

a.

Here, law enforcement discovered the firearms underlying Appellant's sentence enhancement in December 2014, almost two years after the end of the marijuana conspiracy to which Appellant plead guilty, which, as stated in the Marijuana Indictment, continued until February 2013. Because law enforcement located the firearms in

11

Appellant's bedroom along with 400 grams of marijuana and $912 in cash, however, this temporal stretch is insufficient to sever the discovery of the firearms from "the same course of conduct or common scheme as the offense of conviction." *Manigan*, 592 F.3d at 628–29 (citation omitted). Indeed, we have held that the conduct relevant to such enhancement is not confined to the crime of conviction, but may include drug amounts, money from drug sales, and guns possessed while engaging in drug sales, "related to, though not distinct from, the crime of conviction." *United States v. Falesbork*, 5 F.3d 715, 720 (4th Cir. 1993) (collecting cases).

b.

As to Appellant's attempt to show that the firearms were connected to hunting and thus any link to drug distribution was "clearly improbable," *Manigan*, 592 F.3d at 632 n.8, the district court discredited Santonio's testimony because he was unaware that Appellant was involved in the drug trade. This, in the court's view, rendered the testimony insufficient to overcome the fact that the firearms were located alongside amounts of cash and drugs indicating illicit trafficking. We "accord the district court's credibility determinations great deference." *United States v. McKenzie-Gude*, 671 F.3d 452, 463 (4th Cir. 2011) (internal quotation marks omitted) (quoting *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009)). Thus, although the discovery of the long guns in Appellant's residence nearly two years after the marijuana conspiracy alone might not suffice to trigger the enhancement, *see* § 2D1.1 cmt. n.11(A), viewed alongside the cash and marijuana at the scene of discovery, the link between the firearms and

12

Appellant's offense was not clearly improbable. We therefore affirm the district court's imposition of a firearm enhancement pursuant to § 2D1.1(b)(1).

2.

In drug trafficking cases, the Guidelines grant a reduction of two offense levels if the defendant meets the criteria of Guidelines § 5C1.2(a)(1)–(5). *See* U.S.S.G. § 2D1.1(b)(17). This is referred to as the "safety valve" reduction because it allows shorter sentences for first-time offenders otherwise facing mandatory minimum sentences. *See United States v. Fletcher*, 74 F.3d 49, 56 (4th Cir. 1996). To receive the reduction, a defendant must prove by a preponderance of the evidence that he or she satisfies each of § 5C1.2(a)'s five criteria. *See United States v. Aidoo*, 670 F.3d 600, 607 (4th Cir. 2012); *United States v. Thompson*, 554 F.3d 450, 455 (4th Cir. 2009).

a.

Here, the parties only dispute whether Appellant meets one of the safety valve criteria -- that Appellant "did not . . . possess a firearm . . . in connection with the offense." § 5C1.2(a)(2).[4] The Government argues the safety valve reduction is inapplicable because Appellant "failed to show that it was clearly improbable that his possession of the weapons was connected to the charged offense." Appellee's Br. 18. In

---

[4] The other four criteria are as follows: (1) "the defendant does not have more than 1 criminal history point"; (2) "the offense did not result in death or serious bodily injury to any person"; (3) "the defendant was not an organizer, leader, manager, or supervisor of others in the offense"; and (4) "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." § 5C1.2(1), (3)–(5).

13

doing so, however, the Government invokes the standard of proof applicable to a weapon enhancement rather than a safety valve reduction, that is, "clearly improbable" rather than "preponderance of the evidence." This is not a distinction without a difference.

Indeed, at least five of our sister circuits have held that a weapon enhancement pursuant to § 2D1.1(b)(1) does not foreclose a safety valve reduction despite § 5C1.2(a)(2)'s requirement that a defendant seeking the reduction did not possess a firearm in connection with the offense. *See, e.g.*, *United States v. Carillo-Ayala*, 713 F.3d 82, 91 (11th Cir. 2013); *United States v. Anderson*, 452 F.3d 87, 90 (1st Cir. 2006); *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1188 (10th Cir. 2004); *United States v. Bolka*, 355 F.3d 909, 914 (6th Cir. 2004); *United States v. Nelson*, 222 F.3d 545, 549–51 (9th Cir. 2000). These holdings are based on the different standards of proof applicable to, on one hand, overcome a § 2D1.1(b)(1) firearm enhancement, and on the other hand, satisfy § 5C1.2(a)(2) to obtain a safety valve reduction. Whereas a defendant may be unable to show that any connection between a firearm and an offense is "clearly improbable," the same defendant might be able to prove "by a preponderance of the evidence" that the firearm was not connected with the offense to satisfy § 5C1.2(a)(2). *See, e.g.*, *Anderson*, 452 F.3d at 90; *Bolka*, 355 F.3d at 914.

b.

At Appellant's sentencing hearing, the district court did not clearly apply separate analyses to determine whether the firearm enhancement applied as opposed to the safety valve reduction. *Compare* J.A. 178 ("[B]ecause of the weapon enhancement, the safety valve would not otherwise apply regardless of where the Court falls in terms of

14

acceptance of responsibility."), *with id.* at 180 ("[I]n connection with [Appellant's marijuana distribution, Appellant] possessed a firearm."). Nevertheless, even if the court circumscribed its analysis on the safety valve reduction in light of the weapon enhancement, we conclude that such error was harmless.

The district court's decision in this regard was well reasoned. The court discredited Appellant's witness, made note of the fact that the proffered hunting license was expired when law enforcement discovered the firearms, and reasoned that the status of the shotgun as reportedly stolen "undermines any suggestion of a legitimate acquisition." J.A. 180. Given these factual findings, Appellant failed to show by a preponderance of the evidence that the firearms were not connected to his drug distribution, which the cash and drugs located in the very same bedroom evinced. Therefore, we conclude that even assuming the district court erred in its safety valve analysis, any such error was harmless, and we affirm the district court's refusal to grant a safety valve reduction. *See Gomez-Jimenez*, 750 F.3d at 382.

### B.

We next consider the district court's refusal to reduce Appellant's offense level for acceptance of responsibility. Section 3E1.1(a) of the Guidelines provides for a two-level reduction "[i]f [a] defendant clearly demonstrates acceptance of responsibility for [an] offense." "To earn the reduction, a defendant must prove to the court by a preponderance of the evidence 'that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct.'" *United States v. Dugger*, 485 F.3d 236, 239 (4th Cir. 2007) (quoting *United States v. Nale*, 101 F.3d 1000, 1005 (4th Cir. 1996)). In

15

determining whether a defendant has satisfied this standard, a sentencing court may consider, in relevant part, (a) truthful admissions to the underlying offenses or related conduct; (b) voluntary withdrawal from crime; (c) voluntary and prompt surrender to authorities; and (d) the timeliness of the defendant's apparent acceptance of responsibility. *See* § 3E1.1(a) cmt. n.1.

Here, Appellant argues the district court erred in refusing to grant a reduction because he voluntarily surrendered to authorities after the court revoked his pretrial release, admitted to his offense conduct while debriefing with law enforcement, and promptly pled guilty to the offenses. But this argument understates Appellant's conduct.

Despite the post-apprehension conduct Appellant highlights, he fails to mention that after his first arrest, he resumed distributing drugs. Indeed, while under indictment and on bond, Appellant upped the ante and distributed cocaine in addition to marijuana. We have upheld denials of reductions for acceptance of responsibility where, as here, the defendant continues criminal activity after apprehension, indictment, or guilty plea. *See, e.g.*, *Dugger*, 485 F.3d at 240 (affirming denial of reduction where defendant admitted dealing drugs before and after incarceration); *United States v. Kidd*, 12 F.3d 30, 34 (4th Cir. 1993) (upholding denial of reduction where defendant continued cocaine use and distribution after indictment and plea agreement).

In light of Appellant's resumption of criminal activity after his first arrest, we hold that the district court did not err in refusing to grant a reduction. This is especially so given the "great deference" we accord to sentencing courts in making such

determinations.  § 3E1.1 cmt. n.5.  We therefore affirm the district court's denial of a sentence reduction for acceptance of responsibility.

C.

Finally, we assess the substantive reasonableness of Appellant's sentence, taking note of the district court's upward variance from the advisory range of 97 to 121 months' imprisonment to the sentence imposed of 161 months' imprisonment.  A sentencing court must "impose a sentence sufficient, but not greater than necessary," to serve the purposes of the Guidelines and factors enumerated in 18 U.S.C. § 3553(a).  *McDonald*, 850 F.3d at 643 (citation omitted).  Those factors include the seriousness of the offense, promotion of respect for the law, deterrence, protection of the public, and correctional treatment for a defendant.  *See* § 3553(a)(2).

We review a variant sentence to determine the reasonableness of imposing such sentence and the extent of the variance from the Guidelines range.  *See United States v. Washington*, 743 F.3d 938, 943–44 (4th Cir. 2014).  We will vacate such sentence if its stated reasoning is inadequate or if it relies on improper factors.  *See United States v. Hernandez-Villanueva*, 473 F.3d 118, 123 (4th Cir. 2007).  "We must defer to the district court and affirm a reasonable sentence, even if we would have imposed something different."  *Washington*, 743 F.3d at 943–44 (citing *United States v. McNeill*, 598 F.3d 161, 166 (4th Cir. 2010)).

Here, although the district court varied upward from Appellant's Guidelines range by 40 months, the sentence was not unreasonable.  In arriving at its sentence, the district court relied on factors enumerated in § 3553(a)(2), including "the need to deter criminal

conduct, protect the public from further crimes . . . , and . . . to promote respect for the law." J.A. 284. The district court noted Appellant's minimal criminal history and that he "deserve[d] some credit for pleading guilty in both cases and admitting his conduct." *Id.* Nevertheless, the district court emphasized that Appellant resumed his drug distribution only two months after his September 2012 arrest, and again two months after his December 2014 arrest while released on bond. In addition, the district court recounted how Appellant requested a modification to the terms of his release allowing him to remove an electronic monitor and return to work, but shortly after the court granted this request, law enforcement discovered Appellant was again dealing drugs. The district court reasoned that neither Appellant's Guidelines calculation nor his criminal history adequately took account of these particular facts. Taken as a whole, the district court provided adequate reasoning for its sentence and did not rely on improper factors. *See Hernandez-Villanueva*, 473 F.3d at 123.

As to the length of Appellant's sentence and its variance from his Guidelines range, we have upheld comparatively greater variances given a firm application of the § 3553 factors. *See, e.g.*, *Hernandez-Villanueva*, 473 F.3d at 123 (upholding sentence three times as long as upward end of Guidelines range given district court's conclusion that range did not fully account for defendant's criminal behavior). Appellant's sentence was therefore substantively reasonable. We thus affirm the district court's upward variance and ultimate sentence.

## IV.

Based on the foregoing, we affirm Appellant's sentence.

*AFFIRMED*