**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4307

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

     v.

JEREMY HOUGH,

               Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Dever III, District Judge. (5:18-cr-00365-D-1)

Argued: September 11, 2020               Decided: November 3, 2020

Before KING, WYNN, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge King and Judge Diaz joined.

**ARGUED:** Jaclyn Lee Tarlton, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Evan M. Rikhye, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Defendant Jeremy Hough pleaded guilty to one count of being a felon in possession of a firearm. At sentencing, the district court imposed a four-level enhancement based on Hough's possession of a firearm in connection with another felony offense. The district court also granted the government's motion for an upward departure, finding that the Sentencing Guidelines did not adequately reflect the seriousness of Hough's criminal history or his likelihood of recidivism. Hough was sentenced to seventy-eight months' imprisonment.

On appeal, Hough argues that the district court erred in applying a sentencing enhancement and departing upward and that his sentence was substantively unreasonable. We conclude that any procedural error was harmless and that the sentence was substantively reasonable. Accordingly, we affirm.

I.

On April 23, 2018, Stanley Boyd was shot in Raleigh, North Carolina, by an assailant wielding a black handgun. He died from his wounds on May 11. An investigation by officers from the Raleigh Police Department ("RPD") led them to view Hough as the suspect and obtain an arrest warrant for him.

On May 8, 2018, acting on information that Hough was present at a sweepstakes store in Raleigh, RPD officers approached the store and observed Hough exit it. Hough entered a black Lexus, but as the officers got into position to execute an arrest, he exited the vehicle and fled on foot.

3

While pursuing Hough, the officers observed a pink object in his hand. However, when they apprehended him, the officers did not locate the pink object on Hough's person. Retracing Hough's steps, the officers retrieved a pink Ruger 9mm handgun from a bush. Hough later admitted to possessing the gun at the time of his arrest.

On September 11, 2018, a federal grand jury in the Eastern District of North Carolina returned a single-count indictment charging Hough with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. On December 3, 2018, Hough pleaded guilty to that charge.

The probation office prepared a presentence investigation report ("PSR") that established a total offense level of 15, a criminal history category of IV, and a Guidelines range of thirty to thirty-seven months' imprisonment. In calculating Hough's advisory Sentencing Guidelines range, the probation officer added a four-level enhancement to Hough's base offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B).

Section 2K2.1(b)(6)(B) provides a four-level enhancement if the defendant "used or possessed *any* firearm . . . in connection with another felony offense." U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) (U.S. Sent'g Comm'n 2018) (emphasis added). While it is undisputed that the pink 9mm handgun was not the murder weapon in Boyd's shooting, the probation officer supported the enhancement on the theory that Hough, on the day of his arrest, possessed the pink 9mm handgun *in connection* with Boyd's shooting approximately two weeks earlier. The probation officer also subtracted three levels for acceptance of responsibility.

4

Hough objected to several aspects of the PSR, including the addition of four levels for possessing a firearm in connection with another felony offense.

At sentencing, the government presented testimony from Special Agent Larry Bear. Bear reviewed the relevant investigation reports prior to testifying but was not otherwise involved in the state's murder case. According to Bear's testimony, witnesses to the shooting claimed the shooter was a Black or Hispanic male with a light complexion and shoulder-length hair who drove away from the shooting in a black Lexus. Six spent .380 caliber casings were recovered at the scene. Bear further testified that based on the shooter's description, the officers identified Hough as a potential suspect; and that, prior to his death, Boyd identified Hough in a photo lineup. Bear also noted that the cellular location records associated with the phone found on Hough's person during his arrest placed that phone at the location of the shooting. Neither the government nor Hough presented any additional evidence.

Based on Bear's testimony, the government argued that the § 2K2.1(b)(6)(B) enhancement was appropriate because Hough pleaded guilty to possession of a firearm, and a preponderance of the evidence showed that Hough shot Boyd. The government contended that Hough rid himself of the .380 caliber gun because of its connection to the Boyd shooting and instead obtained the Ruger 9mm handgun he possessed when he was arrested.

Hough disagreed with the government's view of the sentencing enhancement. He argued that even if he had been involved in the April 23, 2018 shooting of Boyd with a .380 caliber handgun—which he denied—his May 8, 2018 possession of a 9mm handgun

5

was a separate "course of conduct," rendering § 2K2.1(b)(6)(B) inapplicable under the relevant Guidelines commentary. U.S. Sent'g Guidelines Manual § 2K2.1 cmt. n.14(E)(ii). He argued that the evidence showed the two incidents were separate and distinct because they involved different firearms in different locations related to different offenses (possession versus discharge of a firearm).

Finding Special Agent Bear to be credible, the district court found that a preponderance of the evidence indicated that Hough had shot Boyd. The court further found that two and a half weeks was a sufficiently short time interval to conclude that Hough's possession of the pink Ruger 9mm handgun on May 8 was linked to the shooting of Boyd on April 23. The court found that although Hough "was not in possession of [the firearm used to shoot Boyd] on May 8th, 2018 . . . he was in possession of another gun because he was aware of what he had done on April 23rd, 2018." J.A. 99.[1] Accordingly, the district court applied the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

The district court calculated Hough's advisory Sentencing Guidelines range to be thirty to thirty-seven months' imprisonment, based on a total offense level of 15 and a criminal history category of IV. The court then granted the government's motion for an upward departure pursuant to U.S.S.G. § 4A1.3(a)(1), noting that Hough's criminal history category failed to adequately reflect the seriousness of his criminal history or his likelihood of recidivism. Applying the framework set forth in *United States v. Dalton*, 477 F.3d 195, 200 (4th Cir. 2007), the district court set Hough's criminal history category at VI and

---

[1] Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

6

traversed the offense level upward to 19, resulting in a new advisory Guidelines range of sixty-three to seventy-eight months' imprisonment.

The court then turned to the 18 U.S.C. § 3553(a) sentencing factors, considering Hough's personal characteristics—including his troubled childhood—as well as his "deeply troubling" criminal history. J.A. 116. Emphasizing the need for just punishment and incapacitation, the court sentenced Hough to seventy-eight months' imprisonment. In imposing its sentence, the district court stated that it believed its calculation of Hough's advisory Guidelines range and its upward departure were both correct, but that in any event, it would have imposed the same seventy-eight-month sentence as an alternative variant sentence. The court cited *United States v. Gomez-Jimenez*, 750 F.3d 370 (4th Cir. 2014), and *United States v. Hargrove*, 701 F.3d 156 (4th Cir. 2012), as authority for its pronouncement of an alternative variant sentence. Finding that a sentence of seventy-eight months was sufficient but not greater than necessary, the court concluded that it would impose the same sentence even if it erred in calculating Hough's advisory Guidelines range. Hough timely appealed.

II.

On appeal, Hough raises procedural and substantive objections to his sentence. Procedurally, he contends that the district court erred in applying the Guidelines enhancement because the government failed to prove that his May 8 possession of the 9mm handgun was connected to the April 23 shooting of Boyd with a .380 caliber handgun. Additionally, he argues that the district court erred in granting the government's motion for an upward departure because it relied on factors—notably, Hough's criminal history—

7

that were already accounted for in the advisory Guidelines range. Substantively, Hough argues that the court abused its discretion when it sentenced him to seventy-eight months' imprisonment because the nature and circumstances of the offense, as well as Hough's personal history and characteristics, warrant a much lower sentence.

"As a general matter, in reviewing any sentence 'whether inside, just outside, or significantly outside the Guidelines range,' we apply a 'deferential abuse-of-discretion standard.'" *United States v. McDonald*, 850 F.3d 640, 643 (4th Cir. 2017) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). Under this standard, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Bolton*, 858 F.3d 905, 911 (4th Cir. 2017). "We first review for procedural errors; '[i]f and only if,' we find no such procedural errors may we assess the substantive reasonableness of a sentence." *Id.* (alteration in original) (quoting *McDonald*, 850 F.3d at 643).

However, in line with Rule 52(a) of the Federal Rules of Criminal Procedure and this court's holding in *United States v. Savillon-Matute*, 636 F.3d 119 (4th Cir. 2011), "it is unnecessary to vacate a sentence based on an asserted guidelines calculation error if we can determine from the record that the asserted error is harmless." *McDonald*, 850 F.3d at 643. A procedural error is harmless if "(1) the district court would have reached the same result even if it had decided the guidelines issue the other way, and (2) the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." *Bolton*, 858 F.3d at 911 (quoting *Gomez-Jimenez*, 750 F.3d at 382). The Court must be "certain" on these two points. *United States v. Gomez*, 690 F.3d 194, 203 (4th Cir. 2012).

8

In performing this review, we may assume that a procedural error occurred "and proceed to examine whether the error affected the sentence imposed." *McDonald*, 850 F.3d at 643. We have applied this "assumed error harmlessness inquiry" in multiple cases. *See, e.g.*, *United States v. Doctor*, 958 F.3d 226, 238–39 (4th Cir. 2020); *Bolton*, 858 F.3d at 914; *McDonald*, 850 F.3d at 644–45; *United States v. Rivera-Santana*, 668 F.3d 95, 103 (4th Cir. 2012).

Applying the "assumed error harmlessness" analysis, we assume without deciding that the district court erred in applying the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) and upwardly departing pursuant to U.S.S.G. § 4A1.3(a)(1). The inquiry then directs us to determine whether the district court would have reached the same seventy-eight-month sentence absent the error, and whether that sentence is reasonable.

Under the first prong, we believe that the district court would have imposed the same seventy-eight-month sentence even if its challenged Guidelines decisions were in error. Indeed, the district court expressly stated that although it believed it had "properly calculated the advisory guideline range" and "properly upwardly departed," it would "impose the same sentence as an alternative variant sentence." J.A. 118–19.

Tellingly, the district court did not simply utter the "magic words" of "alternative variant sentence." Response Br. at 29. Rather, the district court engaged in a thorough review of Hough's criminal history—apart from the alleged murder of Boyd—and likelihood of recidivism, and found that "society needs to be protected from [Hough]" and that his likelihood of recidivism was a "mere certainty." J.A. 109, 117. The court was particularly "troubl[ed]" by Hough's prior conviction for Hobbs Act conspiracy, which

9

involved the suspects kicking an elderly man during a jewelry store robbery. J.A. 117. Further, the district court cited *Gomez-Jimenez*, *Hargrove*, and the 18 U.S.C. § 3553(a) factors in support of its announcement that it would have imposed the same sentence as an alternative variant sentence.

In short, "the district court has expressly stated in a separate and particular explanation that it would have reached the same result, specifically citing to" relevant case law, including *Hargrove*, and to "its review of the § 3553(a) factors." *Gomez-Jimenez*, 750 F.3d at 383. This meaningful review of Hough's specific characteristics and citation to Fourth Circuit case law and § 3553(a)—viewed alongside the express statement that the court would impose the same sentence as an alternative variant sentence—lead us to believe that the district court would have reached the same sentence even if the court's challenged Guidelines determinations were in error.

Under the second prong, we must determine whether the sentence was substantively reasonable. This review entails "looking to 'the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in [18 U.S.C.] § 3553(a).'" *Doctor*, 958 F.3d at 239 (alteration in original) (quoting *Gomez-Jimenez*, 750 F.3d at 383).

In light of our deferential standard of review and the district court's thorough statement of reasons supporting Hough's sentence, we conclude that the district court's sentence was substantively reasonable. The district court considered Hough's personal circumstances, including his troubled childhood, his age, and the fact that he had obtained a GED. But the court also determined that Hough's criminal history, violations of court-

imposed supervision, and lack of respect for the law—including his "contumacious[]" attitude during the sentencing proceedings—were relevant. J.A. 116–18. Finding a great need for incapacitation, as well as just punishment and general deterrence, the court sentenced Hough to seventy-eight months' imprisonment, noting that the sentence was "sufficient but not greater than necessary for [Hough]." J.A. 117–19. The district court's sentence was firmly rooted in the 18 U.S.C. § 3553(a) factors and Hough's specific circumstances. We cannot conclude that the court abused its discretion.

Because we believe that the district court would have imposed the same sentence had it erroneously calculated Hough's Guidelines range or erroneously upwardly departed, and because we find that Hough's sentence is substantively reasonable, any alleged procedural error was harmless.[2] *See McDonald*, 850 F.3d at 645.

Accordingly, for the foregoing reasons, we affirm.

*AFFIRMED*

---

[2] In his reply brief, Hough alleges for the first time that the district court erred under *United States v. Blue*, 877 F.3d 513 (4th Cir. 2017), by failing to address his nonfrivolous arguments for a lower sentence. Hough waived that argument "by failing to present it in [his] opening brief." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).