**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4713

UNITED STATES OF AMERICA,

  Plaintiff – Appellee,

 v.

JOSE ARMONDO RAMOS CABRERA,

  Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  N. Carlton Tilley, Jr., District Judge.  (1:18-cr-00401-NCT-1)

Argued:  October 30, 2020         Decided:  December 21, 2020

Before AGEE, WYNN and RICHARDSON, Circuit Judges.

Affirmed by unpublished opinion.  Judge Agee wrote the opinion, in which Judge Wynn and Judge Richardson joined.

**ARGUED:**  Lisa S. Costner, LISA S. COSTNER, PA, Winston-Salem, North Carolina, for Appellant.  Michael Francis Joseph, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:**  Matthew G.T. Martin, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jose Ramos Cabrera appeals his sentence for conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841 and 846. He argues that the district court clearly erred in applying a two-level offense enhancement for possession of a firearm in connection with a drug trafficking offense under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1). For the reasons that follow, we affirm the judgment of the district court.

I.

In 2015, the United States Drug Enforcement Administration ("DEA"), North Carolina State Bureau of Investigation, Surry County Sheriff's Office, Yadkinville Police Department, and Mount Airy Police Department identified a Mexico-based drug-trafficking organization ("DTO") that was smuggling large quantities of methamphetamine from Mexico into North Carolina. The investigation—which consisted of the use of controlled purchases, traffic stops, searches of vehicles and residences, and personal interviews—revealed that Cabrera was "a primary source of methamphetamine during the conspiracy." J.A. 262.

In 2018, Cabrera and several other DTO members were named in a fifteen-count indictment in the U.S. District Court for the Middle District of North Carolina, alleging narcotics and firearms violations. Specifically, Cabrera was charged with conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846; and

2

possession with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, in violation of U.S.C. § 841(a)(1) and (b)(1)(C). Cabrera pleaded guilty to the conspiracy charge.

In preparation for Cabrera's sentencing hearing, the probation officer submitted a pre-sentence report ("PSR"). The PSR set Cabrera's base offense level at 38 by attributing him with 148 kilograms of methamphetamine and 300 grams of fentanyl, which equaled 296,750 kilograms of converted drug weight.[1] It also applied a two-level enhancement under § 2D1.1(b)(1) for possession of a firearm in connection with a drug trafficking offense and a three-level reduction under § 3E1.1(a) and (b) for acceptance of responsibility. This resulted in an adjusted offense level of 37, which—when coupled with a criminal history category of I—yielded a Guidelines range of 210 to 262 months' imprisonment.

At sentencing, Cabrera objected to the application of the two-level enhancement for possession of a firearm in connection with a drug trafficking offense.[2] Specifically, he argued that the enhancement was inapplicable because the firearm found in his possession was unrelated to his underlying conspiracy conviction. The enhancement was based on a firearm seized from Cabrera when he was involved in a motor vehicle accident near Atlanta, Georgia on April 14, 2018. The PSR summarized the incident as follows:

---

[1] At sentencing, the district court did not hold Cabrera accountable for the fentanyl, which reduced the converted drug weight attributable to him to 296,000 kilograms. However, his base offense level remained at 38.

[2] Cabrera asserted other objections that are irrelevant to the calculation of his Guidelines range and to this appeal.

> **Jose Ramos Cabrera** told officers that he had fallen asleep at the wheel, crossed over the center line, and struck the other vehicle. The officer noted a strong odor of marijuana during the contact with **Jose Ramos Cabrera.** When asked about the odor, **Jose Ramos Cabrera** admitted he recently "rolled a blunt." The officer observed the marijuana "blunt" in the vehicle's front seat ash tray. Upon locating marijuana, the officer searched the vehicle. During the search, the officer located a black book bag. Within the book bag, the officer located a glass jar containing approximately **76.32 grams of marijuana,** numerous clear plastic baggies**, $19,913 in U.S. currency**, and a Glock 43 handgun, serial number BEMW921. Officers also located a folder which contained **Jose Ramos Cabrera's** passport, his child's birth certificate, and a note that read, "6000 Oakdale Road Mableton, GA 30126; 40mins "Drive," Pull up, drop off, don't know word or answer Any Question."

J.A. 268 (emphases in original). During this traffic stop, officers also recovered $2,700 in Cabrera's pockets. No methamphetamine was discovered.

Joel Lopez and David Steele, two of Cabrera's co-defendants, testified at sentencing, discussing Cabrera's firearm possession in the process. Lopez testified that Cabrera carried a firearm, but that he never saw a firearm when Cabrera was picking up or distributing methamphetamine. Steele testified that he purchased methamphetamine from Cabrera on a weekly basis for nearly a year and never saw Cabrera with a firearm. Although the Government's position prior to the sentencing hearing had been that the firearm found during the Georgia car accident was sufficient to justify the enhancement, the Government advised the district court that, in light of Lopez and Steele's testimony, "it would be hard for us to argue based on this one incident in Georgia . . . that [Cabrera] used [the firearm] in the drug trafficking scheme that we indicted him for." J.A. 141.

4

The district court then engaged in the following exchange with the Government:

THE COURT: What is the standard?

[THE GOVERNMENT]: Your Honor, my understanding, is that it is a preponderance standard.

THE COURT: Well, what does the guideline say? Didn't you quote that in your position paper?

[THE GOVERNMENT]: I think I did, Your Honor. I put in there that Section 2D1.1(b)(1) reflects the increased danger of violence when drug traffickers possess weapons.

THE COURT: Isn't there something about unless it is clear improbably [sic]?

[THE GOVERNMENT]: Yes, Your Honor, and then the other part -- the Application Note 11, says unless it is clearly improbable that the weapon was connected with the offense. I don't know that it is clearly improbable.

THE COURT: I mean, here we've got -- it is found in a book bag with over $19,000, as well as marijuana and a note that clearly relates to drugs.

[THE GOVERNMENT]: Yes, Your Honor.

THE COURT: In his pocket is over $2,000, and it is during the period of this conspiracy.

[THE GOVERNMENT]: It is, Your Honor.

THE COURT: He was going to Georgia to procure drugs and bring them back here.

[THE GOVERNMENT]: That is clear, he was.

5

| THE COURT: | Bringing them up here on a regular basis. Those are the facts that you all agreed on, is that correct? |
| --- | --- |
| [THE GOVERNMENT]: | Yes, Your Honor. |
| THE COURT: | Thank you. |
| [THE GOVERNMENT]: | So that would be the government's position. Thank you. |

J.A. 141–42.

In response, Cabrera argued that the Georgia car accident was the only instance involving a firearm and drugs and that, while he had been driving a car with a considerable amount of money and marijuana, "that is not the object of this particular charge in the conspiracy." J.A. 143. The district court overruled Cabrera's objection to the § 2D1.1(b)(1) firearm enhancement, stating:

> We know drugs were coming from Georgia to [North Carolina]. We know he had just short of $20,000 in the book bag, and over $2,000 -- $2,700 in U.S. currency in his pocket. How is that clearly improbable that it was connected to drug trafficking going on here?
>
> . . . .
>
> I believe that's sufficient. We know drugs were coming from there. It is certainly not clearly improbable that the $22,000 he had was to purchase drugs and bring them back here. That's not clearly improbable. He's doing that, a lot of it.

J.A. 144. The district court then adopted the PSR's recommended Guidelines calculation. After listening to the parties' § 3553(a) arguments, the district court sentenced Cabrera near the bottom of the Guidelines range: 220 months' imprisonment.

6

Cabrera noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

On appeal, Cabrera argues that the district court clearly erred in applying the two-level offense enhancement under § 2D1.1(b)(1). "'In assessing whether a district court properly calculated the Guidelines range, including its application of any sentencing enhancements, we review the district court's legal conclusions *de novo* and its factual findings for clear error.'" *United States v. Fluker*, 891 F.3d 541, 547 (4th Cir. 2018) (alterations omitted). Applying a clear error standard, we "will not reverse a lower court's finding of fact simply because we would have decided the case differently." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal quotation marks omitted). According to the Supreme Court, we can find clear error only if, "'on the entire evidence,' [we are] 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Under § 2D1.1(b)(1), a defendant's offense level for a drug trafficking offense is increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." The enhancement "reflects the increased danger of violence when drug traffickers possess weapons" and "*should* be applied if the weapon was present, *unless* it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.11(A) (emphases added). The Government bears the initial burden of proving that a weapon was possessed "'in connection with drug activities.'" *United States v. Bolton*, 858 F.3d 905,

7

912 (4th Cir. 2017) (quoting *United States v. Manigan*, 592 F.3d 621, 632 n.8 (4th Cir. 2010)). To meet this burden, "the Government must prove by a preponderance of the evidence that the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." *Manigan*, 592 F.3d at 628–29 (internal quotation marks omitted). The Government may prove such possession "even in the absence of 'proof of precisely concurrent acts, for example, 'gun in hand while in the act of storing drugs.'" *United States v. Slade*, 631 F.3d 185, 189 (4th Cir. 2011) (quoting *United States v. Harris*, 128 F.3d 850, 852 (4th Cir. 1997)). Indeed, "the government need prove only that the weapon was 'present,' which it may do by establishing 'a temporal and spatial relation linking the weapon, the drug trafficking activity, and the defendant.'" *United States v. Mondragon*, 860 F.3d 227, 231 (4th Cir. 2017) (quoting *Bolton*, 858 F.3d at 912). If the Government meets this burden, the burden shifts to the defendant, who "may avoid the enhancement by showing that the weapon's link to his . . . drug activities was clearly improbable." *Bolton*, 858 F.3d at 912 (internal quotation marks omitted); *see Slade*, 631 F.3d at 189; U.S.S.G. § 2D1.1 cmt. n.11(A).

Here, we find no clear error in the district court's application of the firearm enhancement. Considering the Government's initial burden under a preponderance standard, the Government demonstrated that Cabrera possessed the firearm in connection with "'drug activity that was part of the same course of conduct or common scheme as the offense of conviction.'" *Manigan*, 592 F.3d at 628–29. In the dialogue recounted above between the district court and the Government, the Government confirmed the facts that led the district court to conclude that application of the enhancement was appropriate.

8

Specifically, the Government confirmed that the firearm recovered during the Georgia car accident—which occurred during the span of the underlying drug conspiracy—was "found in a book bag with over $19,000, as well as marijuana, and a note that clearly relates to drugs" in Atlanta, which was Cabrera's drug source for the charged conspiracy. J.A. 142. The Government also confirmed that $2,700 was recovered in Cabrera's pockets and that he regularly traveled "to Georgia to procure drugs and bring them back" to North Carolina.[3] J.A. 142.

Next, after considering the facts in support of applying the firearm enhancement, the burden shifted to Cabrera. However, he failed to offer evidence to show that the connection between the firearm and his criminal activity was clearly improbable. Rather, defense counsel merely reiterated that Cabrera told officers that the firearm was not his and that the significant sum of money discovered was due to his work in the roofing business. Defense counsel then concluded, "[T]hat's as much as I can say to the Court." J.A. 144. As the U.S.S.G. dictates that the enhancement "*should* be applied if the weapon was present, *unless* it is clearly improbable that the weapon was connected with the offense," U.S.S.G. § 2D1.1 cmt. n.11(A) (emphases added), Cabrera's fundamental failure to rebut the presumption in favor of the firearm enhancement effectively confirmed that the enhancement applies, *Manigan*, 592 F.3d at 630 n.8 ("When the government satisfies its

---

[3] Cabrera does not assert that the Government failed to meet its burden. Rather, addressing only his own burden on clear improbability, he contends that the firearm's connection to his underlying offense of conviction was clearly improbable. As such, Cabrera has not raised a claim on appeal as to the Government's initial burden, and we generally do not consider issues that are not raised by the parties. *United States v. Bartko*, 728 F.3d 327, 335 (4th Cir. 2013) (holding that issue not raised in opening brief is waived).

burden . . . and if the defendant fails to make the 'clearly improbable' showing, the weapon enhancement may properly be applied." (citing *Harris*, 128 F.3d at 853)). We could conclude our inquiry here, as the district court properly applied the enhancement based simply on the burden of proof.

However, even if we were to address the merits, Cabrera's appeal fails nonetheless. In an attempt to demonstrate clear improbability, Cabrera highlights the fact that law enforcement discovered marijuana at the time of the Georgia car accident and not methamphetamine, noting his offense of conviction was for conspiracy to distribute methamphetamine. However, Cabrera's attempt to distinguish between his firearm possession while also possessing marijuana engages an unnecessarily narrow reading of the § 2D1.1(b)(1) enhancement. Rather, "we have held that the conduct relevant to such enhancement is not confined to the crime of conviction, but may include drug amounts, money from drug sales, and guns possessed while engaging in drug sales, 'related to, though not distinct from, the crime of conviction.'" *Bolton*, 858 F.3d at 913 (quoting *United States v. Falesbork*, 5 F.3d 715, 720 (4th Cir. 1993)).

It was not clearly improbable then that the firearm recovered during the Georgia car accident was connected with "'drug activity that was part of the same course of conduct or common scheme as the offense of conviction.'" *Manigan*, 592 F.3d at 628–29. The Georgia car accident occurred during the timeframe that Cabrera participated in his underlying crime of conviction for conspiracy to distribute methamphetamine. Specifically, Cabrera's PSR reveals that the methamphetamine conspiracy occurred from in or about October 18, 2017 to August 12, 2018. Cabrera's Georgia car accident was temporally related to those

10

dates, as it occurred on April 14, 2018. Moreover, it occurred in the metropolitan area of Atlanta, meaning it was also spatially related to his involvement in the methamphetamine conspiracy of moving the methamphetamine from Atlanta to North Carolina. *See United States v. Apple*, 962 F.2d 335, 338 (4th Cir. 1992) (holding that discovery of a weapon "in a place where the conspiracy was carried out or furthered" is sufficient to link the weapon to the conspiracy). In his PSR, Cabrera admitted, "He was involved in the conspiracy by bringing methamphetamine to North Carolina from the Atlanta, Georgia, area." J.A. 279.

Finally, the items discovered following Cabrera's Georgia car accident showed a strong indicia of drug trafficking, including 76.32 grams of marijuana; plastic baggies; $19,913 in U.S. currency; a firearm; his passport; and a note that read, "6000 Oakdale Road Mableton, GA 30123; 40mins 'Drive,' Pull up, drop off, don't know word or answer Any Question." *See United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999) (observing that "a Rolex watch, a wad of $1,055, and a hand gun were . . . indicia of drug dealing"). Therefore, it was not clearly improbable—either temporally, spatially, or substantively— that Cabrera's possession of the firearm was connected with "'drug activity that was part of the same course of conduct or common scheme as the offense of conviction.'" *Manigan*, 592 F.3d at 628–29; *see, e.g.*, *Bolton*, 858 F.3d at 913 (affirming the district court's application of the firearm enhancement, reasoning that "although the discovery of the long guns in Appellant's residence nearly two years after the marijuana conspiracy alone might not suffice to trigger the [firearm] enhancement, viewed alongside the cash and marijuana at the scene of discovery, the link between the firearms and Appellant's offense was not clearly improbable" (internal citation omitted)); *United States v. Cantrell*, 714 F. App'x

11

217, 219 (4th Cir. 2017) (per curiam) (same when the district court had opined that "it was methamphetamine in the Northern District and it was marijuana in the Southern District, but I don't believe that [§ 2D1.1(b)(1)'s scope] needs to be read that narrowly. It was drug distribution in both places," so the facts supported application of the enhancement). Therefore, the district court's application of the enhancement was not in error.

## III.

For the reasons provided above, the judgment of the district court is affirmed.

*AFFIRMED*